THE ORLEANS COUNTY NATIONAL BANK, Appellant, *v.* CHARLES H. MOORE, Impleaded, etc., Respondent.

The rule giving a creditor, holding several obligations or claims against his debtor the right to apply a payment made to him by the debtor, in the absence of any application of the latter, is confined to cases of voluntary payments.

The proceeds of a sale under a judgment of foreclosure of a mortgage given by the debtor to secure various debts, are paid over to the creditor, not as a voluntary payment, but by operation of law, and in the absence of directions given in the security, their application is to be made by the court in accordance with equitable principles.

The rule of equity in such case where the proceeds are insufficient to satisfy all of the debts secured, is that they should be applied *pro rata*, each debt sharing in the fund without regard to priority of date or to the fact that for some of the debts the creditor holds other security.

So far as the question of application of payment is concerned, *Harding* v. *Tifft* (75 N. Y. 461), distinguished; *Wilcox* v. *Fairhaven Bk.* (7 Allen, 270); *Field* v. *Holland* (6 Cranch, 9) disapproved.

*Nat. Bank of N.* v. *Bigler* (83 N. Y. 51) distinguished.

The authorities upon the subject of application of payments collated and discussed.

(Argued January 29, 1889; decided March 5, 1889.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made April 14, 1888, which affirmed an order of Special Term determining as to the application of moneys received on sale of lands under a judgment of foreclosure herein. (Reported below, 48 Hun, 70.)

The material facts are stated in the opinion.

*Walter S. Logan* for appellant. If Church has made no election as to the application of this money, it results only that the creditor to whom the security is given may elect as to the order in which the proceeds may be applied upon the several obligations jointly secured. (*N. Bk.* v. *Bigler*, 83 N. Y. 51.)

*John H. White* for respondent. Equity requires that the property of a debtor should be applied to the payment of his own individual debts, rather than to those where he is surety for another. (*Pattison* v. *Hall*, 9 Cow. 775, note, subd. 3; *Griswold* v. *Savings Bk.*, 93 N. Y. 306; Story's Eq. Jur. § 457 c, note 3; *Mayrratts* v. *White*, 2 Stark. 101; *Bridenbecker* v. *Lowell*, 32 Barb. 9–23; *Dows* v. *Morewood*, 10 Barb. 184; 1 Vern. 24; 1 Har. & John. 764; 2 id. 402.) Where there is no application by the parties, the law prefers one which creates a trust obligation and exonerates sureties, in preference to a simple debt created by operation of law. (*Wright* v. *White*, 7 Daly, 55; *Baker* v. *Stackpole*, 9 Cow. 436.) The general rule is that neither the debtor nor the creditor can so apply a payment as to affect the liability of sureties, without their consent. (12 N. H. 320; 1 McLean C. C. 493; 16 Pet. 121; Gilp. Dist. Ct. 106.) Where the principal makes general payments, the law presumes them, *prima facie*, to be made upon debts guaranteed by a surety, rather than upon others; though circumstances and intent will control this rule of surety, as they do other rules of appropriation. (2 M. & S. 18, 39; 2 Stark. 101; 1 Car. & P. 600; 8 A. & E. 855; 10 J. B. Moore, 362; 4 G. & J. 361; 5 Leigh, 329; 1 Bouvier's, 134, n. 10; *Brander* v. *Phillips*, 16 Pet. 121; *Cory* v. *Leonard*, 56 N. Y. 494; *Jones* v. *Benedict*, 83 id. 79; 17 Hun, 128.) The principle of law by which a creditor, having several demands against a debtor, may elect to appropriate payment to any one of them if the debtor makes no election, is applicable only to voluntary payments. (*B. Bk.* v. *Hill*, 10 Pick. 128; *Cowperthwaite* v. *Sheffield*, 1 Sandf. 416; 3 N. Y. 243; *Bridenbecker* v. *Lowell*, 32

Barb. 9–24; *Jones* v. *Benedict*, 83 N. Y. 79; 1 Am. L. C. [H. & W.] 286; *Pattison* v. *Hull*, 9 Cow. 747; *Stone* v. *Seymour*, 15 Wend. 19.)

Peckham, J. The question in this case arises as to the application of moneys which are the proceeds of the sale of certain lands on foreclosure of a mortgage given by one George B. Church to the plaintiff herein, on the 22d·day of August, 1884. On that day the plaintiff owned and held a note for $2,500, made by Albert S. Warner (who was then wholly insolvent), and indorsed by George B. Church, dated July 3, 1884, and due September 4, 1884. The plaintiff at the same time held and owned a note of $5,000 made by Church and indorsed by one Charles H. Moore, dated June 21, 1884, and due August 23, 1884; also a draft drawn by Church upon and accepted by said Moore for $7,500, dated August 9, 1884, and due August 23, 1884. Moore was an accommodation acceptor of the draft, and Church was the principal debtor therein, and also on the $5,000 note, and was so known to be by the plaintiff before the execution of the mortgage. He was simply indorser on the $2,500 note, and Warner was, in fact, the principal debtor, and was so known to be by the plaintiff. On the date above mentioned plaintiff's cashier requested Church (who also turned out to be insolvent) to execute a mortgage to the plaintiff as collateral security for his indebtedness, which Church agreed to do, and thereupon he went to an attorney to draw the same, and directed him to draw it for $12,500, the amount of the $5000 note and the $7500 draft above mentioned. Before the mortgage was executed, however, the president of the plaintiff informed Mr. Church that it did not include all his liabilities to the plaintiff, and requested that the mortgage be made to include the Warner note upon which he was indorser, and Church consented, and thereupon the mortgage was made for $15,000, which included the three liabilities. The mortgage was conditioned for the payment of $15,000 to the plaintiff one year from date and contained this further condition:

"This grant is intended as security for the payment of $15,000, one year from date, that is to say, as a collateral security for the payment of all notes, bills, drafts, checks or over-drafts, or indebtedness of every name or nature due and owing the said Orleans County National Bank by said Geo. B. Church, to the amount of $15,000, at the termination of one year from the date hereof; nevertheless, the security hereby created shall continue and remain in full force after the expiration of said year until all and every indebtedness due and owing from said Geo. B. Church to said bank is paid and liquidated."

The plaintiff continued to hold the notes up to the time when the mortgage was foreclosed. Judgment of foreclosure was entered in the Orleans county clerk's office in an action brought by the plaintiff against the mortgagor and the said Charles H. Moore and others, on which judgment the mortgaged premises were advertised for sale, and the same were sold on the 9th day of February, 1886, and they were bid off by the defendant Moore for $9,600. Neither Church nor Moore appeared in the foreclosure action, and no personal judgment was demanded against Moore in the complaint. Upon entering judgment by default the plaintiff's attorney, ex parte, entered in the judgment a direction to the sheriff to apply the proceeds of the sale of the mortgaged premises, first to the payment of the note made by Albert S. Warner and indorsed by the defendant Church, and the remainder, so far as necessary, to the payment of the draft and note held by the plaintiff and upon which the said Moore was liable as surety. The first knowledge which Moore had that this provision was inserted in the judgment was after the sale of the mortgaged premises and after he had retained counsel to examine the papers in the foreclosure action, when upon such examination by his counsel the direction in the judgment was discovered. Upon the judgment-roll in the foreclosure suit, and upon affidavits stating these and other facts, the defendant Moore then moved for an order erasing from the judgment the direction above alluded to, and for other relief. The motion was opposed by the

plaintiff upon affidavits then filed, and the court at Special
Term ordered that the direction above-mentioned should be
erased. It was further ordered that the sheriff pay the pro-
ceeds of the sale of the mortgaged premises to the plaintiff,
after deducting his fees and expenses; and upon consent of
the parties a reference was ordered to determine how the net
proceeds of the sale should be applied. The money thus paid
to the plaintiff amounted to $9,467.11, which was not put in
with its other money but was made a special deposit "as per
order of the Supreme Court." The plaintiff claims the right
to apply the proceeds of the sale, first to the extinguishment
of the Warner note, and the balance upon the note for $5,000,
and the draft for $7,500. The defendant Moore claimed
below that the application should be wholly made upon the
note and draft upon which he was liable. The referee applied
the proceeds *pro rata* upon the three pieces of paper upon
which Church was liable. The report of the referee was con-
firmed by the Special Term and plaintiff then appealed to the
General Term. The defendant Moore did not appeal. The
General Term affirmed the order of the Special Term, and
from the order of affirmance the plaintiff has appealed to this
court. The question then arises as to what, if any, right the
creditor has to make the application, or whether the law is to
make it, and if the latter upon what rule it is to be based.

The right of a creditor to apply a payment made to him by
a debtor, in the absence of any application by the debtor,
seems to be confined to cases of voluntary payments. (*Cow-
perthwaite* v. *Sheffield*, 1 Sandf. 416, 453, 454.) In that
case the holder of ten bills of exchange drawn by the
same drawers, but indorsed by different parties, sued the
drawers thereon in England, and seized, under process of out-
lawry (they being non-residents and not appearing in the suit),
funds of the drawers there sufficient to pay half of the aggregate
amount, and obtained judgment for the whole of the ten bills,
and applied the funds so seized upon eight of the ten bills to
the exclusion of the other two, under the assumed right arising
from the warrant and the queen's grant on the outlawry, which

expressly appropriated such moneys to the eight bills exclusively. In a suit in this state by the holder of the two bills against the indorsers thereof it was held, however, that the plaintiffs in the English suit (who were really represented by the plaintiffs in the suit here) had no right to make the application in the way they did, notwithstanding the outlawry proceedings and the warrant and queen's grant for such application, and that the funds they received in England must be applied ratably to the discharge of all the ten bills embraced in the suit. The judgment was affirmed by this court in 3 New York (243); and, at page 253, this particular subject was adverted to, and the principle adopted by the lower court approved.

So in this case, if the mortgagor, by the condition in the mortgage, did not make an application of the moneys which might arise from a sale of the mortgaged premises to any particular debt, such moneys having arisen from a foreclosure and sale of the premises and coming into the hands of the plaintiff (through the sheriff) by reason thereof, and in a judicial proceeding, their application would properly be made by the court, and upon equitable principles.

See, also, *Blackstone Bank* v. *Hill* (10 Pick. 129), where it was held that the right of a creditor, having several demands against his debtor, to appropriate a payment to any one of them, if his debtor at the time of payment made none, is applicable only to voluntary payments. See, also, to the same effect, *Cage* v. *Iler* (13 Miss. 410).

It cannot be said that the moneys are paid voluntarily when they arise upon a foreclosure of a mortgage voluntarily given as a security for the payment of the debts of the mortgagor. The security is a voluntary one, but when the creditor resorts to legal proceedings for the purpose of enforcing it, the moneys arising from the judicial sale of the lands mortgaged are paid over to the creditor and come to his hands as a payment made by the law, and which payment the law will, therefore, apply as shall be just and equitable, in the absence of directions already made in the security itself executed by the debtor.

Upon the facts in this case, what application of the money,

then, should the law make? In looking through the decisions, both English and American, I concur fully with the remarks made by VANDERPOEL, J., in *Cowperthwaite* v. *Sheffield* (*supra*), wherein he states that the subject of the application or imputation of indefinite payments is one upon which the decisions of the common law courts have been lamentably conflicting. In *Stone* v. *Seymour* (15 Wend. 19), Chancellor WALWORTH expressed himself much to the same effect, and in *Pattison* v. *Hull* (9 Cow. 767), Judge COWEN with his usual fullness of learning, entered upon an elaborate review of the authorities both in England and in this country, and still found himself somewhat in doubt as to what was the settled law on the subject, and it is somewhat confused at the present time.

Judge STORY, in his work on Equity Jurisprudence (§ 459 e.), says: "Notwithstanding there are contradictory and conflicting authorities on this subject in the English and American courts, one should think that the doctrine of the Roman law is, or ought to be held, and may well be held the true doctrine to govern in our courts. There is a great weight of common law authority in its favor, and in the conflict of judicial opinion that rule may well be adopted which is most rational, convenient and consonant to the presumed intention of the parties." Going back to the civil law, therefore, for some enlightenment upon the principles to be adopted in cases of this nature, in 1 Domat's Civil Law, by Strahan (Cushing's ed.), page 905, we find a short treaties entitled "Of the imputation of payments," article 3 of which, in speaking of the cases where a debtor owes several debts to one and the same debtor, and has made several payments of which the application has not been made by either party, and where it is necessary to be regulated by the court, says: "The payment is applied rather to a debt of which the non-payment would expose the debtor to some penalty, or to costs or damages, or in the payment of which his honor might be concerned, rather than to a debt which the non-payment would not be attended with such consequences. Thus a payment is applied to the discharge of a debt for which a surety is bound, rather than to acquit what

the debtor is singly bound for without giving any security, or to the discharge of what he owes in his own name rather than of what he stands engaged for as surety for another." The seventh rule, at page 908, provides that " when a debtor obliging himself to a creditor for several causes at one and the same time, gives him pawns or mortgages which he engages for the security of all the debts, the money which is raised by the sale of the pawns or mortgages will be applied in an equal proportion to the discharge of every one of the debts."

In *Perris* v. *Roberts* (1 Vernon Ch. 34 ; *S. C.*, 2 Chancery Cases, 83), a similar rule is held. In that case Perris was surety on a bond executed by J. S. to Roberts. J. S. owed Roberts another debt upon simple contract, and they came to a stated account for all the moneys owing by J. S. to Roberts, and the sum of £85 was found to be the amount due, for which sum J. S. executed a bill of sale. The property contained in the bill of sale having been sold, and the proceeds not being sufficient to pay the £85, it was contended, on the part of counsel for Roberts, that the money should first be applied on the simple contract debt, and what remained, on the debt for which the plaintiff stood as surety. On the other hand, it was contended that, both of the debts having been blended and thrown together and the bill of sale made to secure the whole debt, it should be applied proportionally. The report ends in this way : " And it was so decreed by the lord chancellor, and solely upon this reason, viz., that both the debts had been cast into one stated account, and the bill of sale made towards the satisfaction of the whole debt." Upon the same principle it may be claimed that all the debts of the mortgagor were provided for in this mortgage, or, in other words, cast into one stated account ; because they were all added together and the mortgage given as security for the whole, and not as security for one any more than another. The same principle which would apply, *pro rata*, the moneys derived from the bill of sale to the debt upon the bond in which Perris was surety, as well as upon the account, would

apply the moneys arising upon a sale of the mortgaged premises in this case *pro rata* to the indebtedness of Church for which Moore was surety, as well as to the Warner note upon which Church was indorser only. In Story on Bailments, in the latter part of section 312, the doctrine is laid down, that " if the thing is pledged to one and the same creditor for several debts, and the pledge, when sold, is not sufficient to pay all the debts, the money arising from the sale is to be paid proportionally to all the debts, to extinguish the same *pro tanto.*"

Following out somewhat the same principle the Massachu setts Supreme Court in the case of the *Commercial Bank* v. *Cunningham* (24 Pick. 270), decided that where an insolvent debtor assigned his property for the benefit of such of his creditors " as become parties to the assignment and thereby release their claims," and a dividend is received by one of such creditors, it must be ratably applied to all his claims against the debtor, as well to those upon which other parties are liable and which are otherwise secured, as to those which are not so secured ; and the court held that it was not a case in which the debtor or the creditor had the right to make the application of any payment, for the application was to be made by the law according to the circumstances and justice of the case. The late Judge ALLEN, while he was a, member of the Supreme Court, delivered an opinion in *Bridenbecker* v. *Lowell* (32 Barb. 9), as one of the General Term, wherein he held that where a creditor having several claims against his debtor receives a portion of the entire amount in a judicial proceeding founded upon them all, as the foreclosure of a mortgage given to secure all the debts, the law will apply such money as a payment ratably upon all the claims, the creditor having no right to apply it to the satisfaction of some of the demands, especially for the payment of a debt, for the payment of which a specific fund had been provided to the entire exclusion of the others ; and where the intent of the party to the mortgage was to provide a security for all the debts of the mortgagor, and not to secure one debt, and then

the next debt upon the residue of the mortgage, but rather that all should stand as if contracted at the same time, it was held that the debts must share ratably in the funds realized from the security without regard to priority of date. The mortgage in that case was given by the maker of the notes to the bank and was conditioned as a security "to pay to the said bank all paper then held or thereafter to be held by the said bank upon which the said Gates should be liable as maker, indorser or acceptor."

The moneys arising from foreclosure of the mortgage were not sufficient to pay all the paper upon which the mortgagor was liable, and it was held that the bank had no right to make the application of the payments to any particular debt which was unsecured, but that all the paper upon which the mortgagor was liable should come in and share *pro rata* in the funds realized from the sale of the mortgaged premises. This opinion was concurred in by the other judges at the General Term, and, so far as I can find, has never been reversed or overruled. The case of *Cory* v. *Leonard* (56 N. Y. 494), while not precisely in point, nevertheless, states the principle in accord with the above rule. In that case the bank was paid the full amount of its indebtedness by one of the sureties, who thereupon took the securities which had been given to the bank as collateral for all the debts owing by the principal debtor, and that surety claimed the right to apply the moneys received from the collateral the payment in full of the debt for which he was surety, and then endeavored to collect the balance of a debt for which another was surety from him. The difference in the two cases, of course, lies in the fact that the bank in the Cory case was paid in full and a dispute arose between the different sureties upon the different debts of the same principal; but it was said in the opinion, and the case proceeded upon that theory, that the surety who paid the debt of the bank, and thus became subrogated to its rights, occupied simply the same position in regard to its securities that the bank did; and that the rights of the two sureties in the collaterals were equal in degree, and differed only in the amount of their respective liabilities, and

those rights could not be changed by the transfer to one of the sureties upon his payment of all the indebtedness to the bank for which the security was given.

Nor is there anything in the facts of the case of *Harding* v. *Tifft* (75 N. Y. 461) at all inconsistent with the principle contended for here. In that case there were two demands against one Skinkle held by the plaintiff, and a payment was made by him to the plaintiff, and, as was established by the verdict, without any direction being given by Skinkle as to which of the two debts the money should be applied upon. It was contended, upon the part of the defendant, that as there was a surety for one of the debts the money thus paid must be applied to that debt in preference to the debt for which there was no security. It was held, however, that the creditor had the right to apply it upon either of the demands which he held against the debtor in the absence of any direction given by him, and that this right was not affected by equities existing between the debtor and a third person, of which the creditor had no notice. In the course of his opinion, RAPALLO, J., said : " It is contended that the right of the creditor to the application is subject to the condition that such application be not inequitable, and such is the language used in some of the authorities cited. The equities referred to, however, are usually the equities existing between the debtor and creditor, and I have found no case recognizing those arising out of transactions between the debtor and third persons of which the creditor has no notice. The mere fact that there is a surety for one of the debts does not preclude a creditor from applying a payment thus received to the debt for which he has no security. * * * The money belongs to the debtor, and where the creditor is ignorant of any duty on the part of the debtor in respect to it, he may receive and apply it as if no such duty existed. If no application has been made by either party, and the duty were cast upon the court of making the proper application, the equities of the surety would, doubtless, be considered. But where the application has been made by the

creditor in accordance with his apparent legal right, and in ignorance of any fact which should prevent him from making such application, I do not think he is bound to change it on the subsequent disclosure that a third party had an interest in having it otherwise applied, and that the debtor had violated a duty to such third party in not directing such application. The application made by the creditor cannot be said to have been inequitable if no facts were brought to his knowledge at the time showing that he ought not to make it. It would create great confusion in commercial dealings to hold that after the lapse of time, and when the position of the parties may have been changed by such a payment, the transaction could be reopened and the creditor obliged to revive an unsecured debt which he had treated as paid, and apply the payment on a debt for which he had ample security." In this case, it will be seen, the debtor made the payment voluntarily and that he made no disclosure of the source from which the money came which he paid to his creditor; and the further fact appears that the creditor actually applied the money thus paid to him upon one of the debtor's two debts and in ignorance of any equities existing between the debtor and any third party. Judge RAPALLO, in his opinion, expressly states that if the court were to make the application, upon all the facts being known, the equities of the surety would be considered. There is one case in Massachussetts, *Wilcox* v. *Fairhaven Bank* (7 Allen, 270), which holds a different doctrine. In that case the debtor to the bank conveyed to it certain personal property to be held by it as security for the payment of several promissory notes and drafts upon which he was then, or might within two years thereafter become liable. The personal property was sold for the purpose of paying the liabilities of the debtor upon various pieces of paper, some of which had no sureties and others had different sureties upon them. The property not realizing enough to pay all the liabilities to the bank it claimed the right to first apply the money to the payment of the note upon which the debtor was alone liable, and that being extinguished then upon the paper upon which the

debtor and his sureties who might be insolvent were liable,. and the balance, if any, upon the paper with solvent sureties. The court decided that the bank had the right so to do ; and upon two grounds, one of which was that the sureties had no claim to be subrogated to the rights of the bank in the security without paying or tendering payment in full of all the debts for which the security was given.   This they had not done. With this decision upon the rights of subrogation no fault can be found.   But the further ground was taken that the bank had the right to appropriate the whole proceeds of the mortgaged property to any debt which it chose, and it could, therefore, exercise such right by applying the moneys in the manner claimed by it as above stated.

No authority is cited for such a position, and we think such an application would be inequitable under all the circumstances of the case, and having in view the general rule upon this question as laid down in the civil law and in cases. at the common law following it, as above referred to.   The principle decided in that case leaves out of view entirely all rights or equities of the surety.   The law has always regarded a surety as having some rights in the security, though furnished directly by the debtor to the creditor. The security having been furnished by the debtor, the creditor must dispose of it upon equitable principles, and these equitable principles are entirely lost sight of in the case referred to.

The case of *Field* v. *Holland* (6 Cranch, 9) has not been overlooked. It was a case where payments had been voluntarily made, but no application of them had been directed by the debtor at the time of such payments.   Subsequently he contended that they should have been applied on the judgment in question, to its extinguishment.   The court, per MARSHALL, Ch. J., determined that all payments should be applied to debts existing when the payments were made, and it appearing that there were sundry demands against the debtor at the times which were not secured by judgment,. the payments should be first applied to extinguish those.

demands, and the balance only should be applied on the judgment. It was said by the learned chief justice, that it appeared that the application of the payments had actually been made by the creditor in the manner which the court adjudged should be done. Such application was also held to be supported by general principles as well as by the particular circumstances of the case. The case is cited in *Pattison* v. *Hull* (9 Cowen, *supra*), where COWEN, J., says of it, that he was " persuaded that had the attention of the learned chief justice, who delivered the opinion in the case of *Field* v. *Holland,* been drawn to the great preponderance of authority the other way, his conclusion would have been the same with that of the court in Maryland."

In *Gwinn* v. *Whittaker's Admr.* (1 Har. & John. 754, A. D. 1805), CHASE, Ch. J., said he regarded the principle as firmly established in that state, and that it was in harmony with the English decisions that " if the debtor is indebted on mortgage and simple contract, or on bond and simple contract, and when he makes a payment should neglect to apply it, the law will make the application of it in the way most beneficial to the debtor, that is, to the mortgage or bond." To the same effect is *Dorsey* v. *Gassaway* (2 Har. & John. 402, 411, 412, A. D. 1809.)   None of these cases is exactly in point, yet the one in Cranch, where the payment was voluntary and no direction given by the debtor, does allow the creditor to apply it as he pleases, and also says that the court would apply it if he had not to the debt for which the creditor had the least security.

But in such a case as this, where neither party has applied the payment and the moneys came from the course of judicial proceedings to enforce the security intended as such for all the debts, we think the weight of authority as well as the equities of the case call for the application of the moneys arising in such judicial proceedings to all the debts *pro rata,* especially where the debt to which the bank in this case desires to apply the moneys, in order to its entire extinguishment, is one for which the debtor is bound only as surety, and where such

an application would work injustice to the debtor as to his debts for which another was bound as his surety.

The case of *National Bank of Newburgh* v. *Bigler* (83 N. Y. 51, 63) is not inconsistent herewith. There was no question of the rights of sureties involved in the case. The debtor owned a judgment against the city of New York (but which was still in controversy), and assigned it by an assignment, absolute in form, to the creditor to the extent of $50,000. The evidence showed that the assignment was intended as a general security to the creditor for the indebtedness of the debtor, but it was delivered without any express condition and without any direction as to the application of its proceeds. The judgment was subsequently reversed, but upon a compromise, to which the assignor of the judgment assented, the sum of about $44,000 was paid by the judgment-debtor, the city of New York, to the creditor, with the assent of such assignor. Before such payment he demanded that the amount received from the city should be applied upon certain specific debts of his, which the creditor refused to do, and did apply such payment upon certain other debts of the debtor This court held that when the payment was made by the city to the bank (the creditor), it was the money of the bank and was not that of the debtor Bigler, who had no ownership or control over it, because he had long ago parted with the right to receive it. Not having directed how the money should be applied when he assigned the judgment, and having parted with his ownership without condition, he was held not able to dictate what the bank should do with its own money. This is no such case.

The authors of the learned note to the cases of *Mayor, etc.*, v. *Patten* (4 Cranch [S. C.], 317) and *Field* v. *Holland* (6 id. 8), as found in 1 American Leading Cases, 286, at page 300, in speaking of applications of payments by the law, say, the general rule is to appropriate the payments to all the debts ratably, but that it is very difficult to determine when the principle becomes properly applicable; and they cite the case of *Blackstone Bank* v. *Hill* (10 Pick. 129, *supra*) as recog-

nizing the rule that the right of application by the creditor, when the debtor omits to make it, does not apply to cases of payment *in invitum*, or by process of law. Many cases are cited in the note on this branch, but the authors finally assert their belief that the general principle of the common law is that the ownership of the money determines the right of appropriation, and after it is paid the debtor can make none. It would seem that in cases of payment *in invitum*, or by judicial proceedings, the creditor does not become the owner of the money until it is paid, and the law at the very time of the payment makes its own application, and the creditor has no opportunity to make it himself. It were an endless, if not an unprofitable task, to cite and comment upon the vast number of inconsistent and almost contradictory cases, both English and American, upon this somewhat confused branch of the law. We are disposed to follow the rule laid down in *Bridenbecker* v. *Lowell* (*supra*.) The opinion in that case was written by a judge who was for many years a member of this court, and who had a long judicial experience, and his learning and ability have been universally recognized. His opinion in that case is marked with evidences of great care and research, and we think it is based upon authority and sound reasoning.

Upon a review of the whole case, we are of opinion that the order of the General Term was right, and should be affirmed, with costs to the defendant Moore.

All concur.

Order affirmed.