In the Matter of the Estate of JOSEPH A. FLANNERY, Deceased.

Surrogate's Court, New York County, December 10, 1938.

*Lorenz & Lorenz* [*Keith Lorenz* and *Joseph Lorenz* of counsel], for George Gordon Battle, Keith Lorenz and Max Herbst, committee of the property of Viola F. Francke, petitioners.

*Auchincloss, Alley & Duncan* [*J. Donald Duncan* of counsel], for the administratrix.

*Thomas E. White* [*Thomas E. White* amd *R. Elliott Davis* of counsel], for the Fidelity and Deposit Company of Maryland, surety.

FOLEY, S. This is a proceeding to fix and determine the liability of the surety on the bond of the administratrix brought pursuant to the provisions of section 115-a of the Surrogate's Court Act. Since the death of the decedent in 1915, bitter litigation has arisen between the administratrix, the widow of the decedent, and her two daughters, Mrs. Viola F. Francke and Mrs. Aileen Branca, who constituted the class of distributees of the estate. In the year 1924 an accounting proceeding of the transactions of the adminis-

tratrix was brought on. The daughters, then of age, contested the account, attacking the handling of the personal property and asserting that their mother had diverted to her own use real estate and the proceeds of the sale of real estate. A comprehensive settlement agreement adjusting the disputes was entered into between the mother and the two daughters. An amended account was filed and the agreement was confirmed by the decree made on December 18, 1924, judicially settling the amended account and containing directions for the payment to the administratrix and her daughters of substantial pecuniary amounts.

Some years after the date of that decree Mrs. Francke was adjudicated an incompetent. In 1935 the committee of her property initiated a proceeding to compel compliance by the administratrix with the terms of the decree of 1924 and for the filing of a new account by the administratrix. The surrogate directed that such account should be limited to transactions concerning personal property only and excluded any additional items of debits or credits relating to transactions in real estate left by the decedent and arising subsequent to the date of the prior decree. (*Matter of Flannery*, N. Y. L. J. June 14, 1935, p. 3077.) An amended account was filed pursuant to this decision. Objections to various of its items were filed by the committee of Mrs. Francke. The issues were referred to an official referee. In his report he found that there was due to Mrs. Francke a certain unpaid balance upon the amount directed to be paid to her under the prior decree. The surrogate with a single modification, not of importance here, confirmed the report of the referee and a decree was thereupon made on June 18, 1938, which directed payment by the administratrix to the committee of Mrs. Francke of the principal sum of $44,383.51, with interest thereon aggregating $50,839.03, or a total of $95,222.54. The administratrix has not made any payments to the committee in liquidation of this indebtedness or of the costs awarded against her.

In the pending proceeding the question is presented whether all or a part of this sum shall be fixed as a liability of the surety upon the bond of the administratrix. The chief conflict involves the liability of the surety for transactions relating to the proceeds of the sale of real estate and rents which were included in the amended account of 1924 and made the subject of directions in the decree. The problem of the surrogate in the disposition of these issues has been complicated by the many theories advanced by the committee to obtain a complete recovery, as against the surety, of the total amount fixed by the decree of 1938 and the rival contentions of the surety company to escape any payment.

Under the laws that existed at the date of the appointment of

the administratrix in 1915 and until September 1, 1930, the powers of the administratrix were confined to the administration of the personal property in the estate. The power to sell real property was extremely restricted by the limitations contained in article 13 of the Surrogate's Court Act, and its antecedent provisions of the Code of Civil Procedure. No statutory proceeding for the sale of this decedent's realty was ever begun. It appears, however, that in the compromise agreement of 1924 the parties not only composed their disagreements over the personal property but over the proceeds of the sale of real estate which the administratrix had disposed of without any prior order or decree of the surrogate made in a proceeding authorized by the statute.

In general, these transactions of the administratrix involved the conveyance of real property belonging to the decedent which was held in the names of dummies and the collection of rents from these and other properties. Technically, under the special circumstances of this estate, all real estate transactions had no place in the amended account. However, because of the fact that they were included in the compromise agreement, the decree of 1924 was made, which gave effect to the arrangements made between the administratrix and her two daughters. That decree was binding upon these three heirs and next of kin. It was not conclusive as to realty or its proceeds upon the surety, since the surety was not a party to the settlement agreement and its liability for delinquencies of the administratrix was confined exclusively to personal property. (*Matter of Selleck*, 111 N. Y. 284; *Matter of Drellich*, 254 App. Div. 380.) The contention of counsel for the committee that the surety may be charged for any transactions as to real estate is, therefore, overruled. The further contention that the surety may be charged because the administratrix improperly took possession of the deeds is likewise overruled as without foundation in the law of the administration of estates. Such actions were taken in her private and not in a fiduciary capacity. The further contentions that section 242 of the Surrogate's Court Act, and its antecedent section of the Code of Civil Procedure (§ 2711), provided for the fixation of the interests of the heirs at law in real estate and that the decree of 1924 was made pursuant to those statutes, are likewise overruled. That section must be read with the other material provisions of article 13 as it existed during the period of administration and up to September 1, 1930. The enlargement made effective by the Legislature on that date has no application to the facts here.

Under the former terms of the article, authority to sell real estate was required to be obtained from the surrogate in an accounting

proceeding begun within eighteen months after the issuance of letters and only for the specific purposes defined in the article. These purposes may be summarized as including the sale of realty for the purpose of paying debts, administration expenses and funeral expenses, or where infants or incompetents were interested, to obtain authority to make the sale for the purpose of distribution and in order to avoid partition. There was ample personalty to pay debts and administration expenses. Both of the daughters were of age in 1924 and that part of the article which permitted a sale for distribution was, therefore, not applicable. No proceeding for a sale was begun within eighteen months after letters or indeed at any other time. Again, the article required the prior direction of the surrogate for a sale, and if ordered, a new bond to cover the proceeds was required to be filed or a deposit directed by the surrogate. Furthermore, the general provisions as to a determination of the respective interests of the heirs under section 242 applied only to unsold realty, and not to realty previously conveyed. The latter section may not, therefore, be made the basis of liability by the surety for the realty transactions embodied in the decree of 1924.

The liability of the administratrix to her two children in the conveyance of the real estate or in its management was an individual responsibility in her capacity as dowress or tenant in common.

The further contention of the committee that the proceeds of the real estate were brought into the account and covered by the decree by reason of the adjustment and surrender of rights in the daughters as to personalty, greater than those set forth in the original account, is likewise overruled. The surrogate holds that both daughters were bound by the agreement which they executed and the decree to which they individually consented in writing. The account and the decree earmarked, in distinctive character, the responsibility of the administratrix for personal property and for the proceeds and rents of realty. They may not be modified now by any strained construction or upon any theory of surrender of additional rights affecting either the real estate or personal property.

The contention of the surety that it was exonerated by the so-called assignments of interests in the estate made by the daughter Mrs. Francke in 1925, when she purchased the interests of her mother and sister in certain real estate and paid them by such assignments out of her share, is likewise overruled. An examination of these assignments in evidence shows that they were not express releases of the surety. The surety company was not mentioned in them. These assignments simply constituted general payments on account of the moneys due Mrs. Francke and were correctly treated in the decree of 1938.

■

Consideration must now be given to the method of fixing the amount due by reason of the various payments made by the administratrix on both realty and personalty transactions. With the elimination of the above subjects of dispute, the problem of fixing the liability of the surety becomes less difficult. The surrogate holds that the rules of equity in their relation to the application of payments by a debtor to a creditor must be applied: (1) Where two forms of liability exist and payments are made on general account of them and both the debtor and the creditor have failed to direct the application of a payment, it is the duty of the court to apply it according to equitable principles. (*Orleans County Nat. Bank* v. *Moore*, 112 N. Y. 543; *Lichtenstein* v. *Grossman Construction Corp.*, 248 id. 390.) (2) Where payments are made on two forms of debts, not as voluntary payments, but by operation of law under judicial direction, their application is to be made by the court in accordance with equitable principles. (*Orleans County Nat. Bank* v. *Moore, supra; Title G. & T. Co.* v. *Mortgage Comm.*, 273 N. Y. 415, 425.)

There is not the slightest evidence in the testimony before the referee or the surrogate that either the administratrix as debtor or Mrs. Francke as creditor made any direction or attached any conditions to the payments and specifically as to whether they should be applied on the real estate liability or on the personal property liability fixed in the decree of 1924. Moreover, the payments directed by the decree of 1924 were not voluntary but were the result of a judicial direction. Each side to the controversy now claims a right to change the application of the payments made on account to its own advantage. The surety company may not properly claim that the payments previously made on general account may now be applied to satisfy in full the amounts due for personalty transactions so as to relieve it of any liability. Nor may the committee assert with any degree of legal basis that the payments to Mrs. Francke were made in satisfaction primarily of the real estate liability.

All of such payments made on general account must in equity be prorated between the two forms of debt.

The application of these rules to the present situation of the estate leads to the following computations of the amount payable by the surety: (1) The sum fixed as the total amount due and unpaid to Mrs. Francke by the decree of 1938 was $95,222.54. That sum represents liability for realty and personalty transactions and must be divided in accordance with the foregoing rules of equity. It also must be further broken down because part of it represents an unpaid balance on the individual distributive share of Mrs.

Francke under the decree of 1924 and part of it an additional interest created by the assignment by Mrs. Branca to Mrs. Francke subsequent to the decree of the sum of $51,447.14. The latter situation requires the ascertainment of (a) what part remains due and unpaid upon the individual share of Mrs. Franke, and (b) what part remains due and unpaid upon the assigned share of her sister. The amount payable as the balance of the individual share of Mrs. Francke under the decree of 1924 was $198,293.88. The amount payable to her by reason of the assignment of Mrs. Branca was $51,447.14. The total of these two figures is $249,741.02. The total liability under the decree of 1938 is $95,222.54. The latter sum must be multiplied by a fraction the numerator of which is 5144714 and the denominator of which is 24974102. The result will be a sum which, roughly and tentatively computed, will approximate $20,000. That sum represents the unpaid balance due Mrs. Francke under the decree of 1938 on the assigned share of Mrs. Branca. The balance of approximately $75,000 represents the amount due and unpaid, under such decree, on the individual distributive share of Mrs. Francke.

(2) The latter two amounts must be further broken down in order to ascertain which part represents personalty and which part represents realty. As to Mrs. Francke's individual share, out of a total of $198,293.88 directed to be paid by the decree of 1924, $65,481.57 represented realty and the balance, $132,812.31, represented personalty. In order to compute the proportionate part of the total amount fixed by the decree of 1938 applicable to personalty, the exact result reached in computation (1) above (estimated at approximately $75,000) must be multiplied by a fraction the numerator of which is 13281231 and the denominator 19829388. The result will be the liability of the surety under its bond upon the individual distributive share of Mrs. Francke.

(3) In order to compute the amount due and unpaid for transactions in personal property on account of the assignment made by Mrs. Branca to Mrs. Francke, the foregoing sum of approximately $20,000 in computation (1) must be further broken down. Under the decree of 1924, the total amount payable to Mrs. Branca was $89,036.86. Of this amount, $65,481.57 represented realty proceeds. The balance, $23,555.29, represented the unpaid liability for personalty. The foregoing sum estimated at $20,000 must, therefore, be multiplied by a fraction the numerator of which is 2355529 and the denominator 8903686. The result will be the liability of the surety under its bond upon the share assigned by Mrs. Branca to Mrs. Francke.

(4) The sums arrived at in computation (2) above and computation (3) above when added together will be the total liability of the surety, and it is so fixed and determined. Interest will be allowed on this amount at the legal rate from the date of the decree — June 18, 1938. The attorneys for the committee are directed to serve and file a computation pursuant to this decision, on or before December 17, 1938. The attorneys for the surety company, if they disagree with the arithmetic of the committee in their computation, may serve and file counter-computations on or before December 21, 1938.

(5) The surrogate holds that the surety is liable for the costs awarded against the administratrix by the decree of June 18, 1938. Such costs must, however, be equitably allocated since they were awarded in a proceeding which involved disputes as to payments under the 1924 decree affecting both realty and personalty. The method of allocation of these costs is determined to be the ratio of the final amount of the total liability of the surety under computation (4) above, to the amount directed to be paid by the decree of 1938, to wit, $95,222.54.

A decree may be submitted, on notice, pursuant to the provisions of section 115-a, fixing and determining the liability of the surety in accordance with this decision.