**FIRST NATIONAL CITY BANK,**
**Plaintiff,**

v.

**S. Allan KLINE, Defendant.**

**No. 74 Civ. 457.**

United States District Court,
S. D. New York.

Nov. 2, 1977.

---

Zalkin, Rodin & Goodman, New York City, for plaintiff; Harold N. Schwinger, New York City, of counsel.

Cole & Groner, P.C., Washington, D. C., Samuel Shapiro, New York City, for defendant; Walter H. Fleischer, Alfred F. Belcuore, Washington, D. C., of counsel.

LASKER, District Judge.

First National City Bank ("Citibank") renews its motion for summary judgment, which was denied in part in an earlier memorandum of September 30, 1975. S. Allan Kline ("Kline") cross-moves for summary judgment. For the reasons stated below, Citibank's motion is granted and Kline's is denied.

Since January 28, 1974, Citibank has been prosecuting this case in an attempt to recover from Kline on his guarantee of a $537,500. loan by Citibank to Vogue. Kline's liability as surety is limited to $237,500. Vogue was adjudicated a bankrupt by order of the Hon. C. Alberte Parente, Bankruptcy Judge, December 21, 1976 (Exhibit 7 to Kline's 9(g) Statement).

Citibank's earlier motion for summary judgment was denied because of the potential vitality of two of Kline's affirmative defenses: Citibank's alleged failure to pay promptly on its loan to Vogue, and Citibank's alleged disparagement of Vogue. Further discovery was ordered for the limited purpose of exploring the merits of the defenses. That discovery is now complete and reveals that no genuine issue of fact exists as to Citibank's right to recover.

*Alleged Failure to Pay Promptly*

The deposition of Leslie Saferstein ("Saferstein"), President of Vogue, establishes that the loan agreement between Citibank and Vogue provided a line of credit in the latter's favor (Saferstein Deposition at 60; *see also,* Affidavit of Bart Ciocca Assistant Vice President of Citibank, ¶ 7). That line of credit was made available immediately after the loan agreement was reached (Saferstein Deposition at 60), and each time Vogue sought to draw from its credit reservoir, the request was honored promptly, that is, within twenty-four hours (Saferstein Deposition at 69, 136–38). Herbert Herz, Chairman of the Board of Vogue, corroborates Saferstein's testimony as to the timely performance of Citibank.

Kline offers nothing in direct rebuttal of the deposition testimony. Rather, he relies on his own affidavit, and those of Cunningham, a former director of Vogue, and Davidow, a stockbroker, to the effect that Messrs. Herz and Saferstein complained to several "interested persons" about Citibank's lack of promptness. Both Herz and Saferstein deny having made the complaints described in the various affidavits (Saferstein Deposition at 65–69; Herz Deposition at 21–22). Their testimony makes it clear that any talk by them of delays referred to the tardy production of matching funds, which, by the terms of the loan agreement, were to be furnished from sources other than Citibank.

As indicated above, Herz' and Saferstein's testimony that Citibank performed its loan agreement promptly is uncontested.

As for the affidavits offered by Kline, they would, if true, raise a question of fact not as to Citibank's dispatch, but only as to whether Herz and Saferstein ever complained about delays. The alleged complaints have only a peripheral probative value on whether Citibank was prompt, and that evidentiary value disappears when direct testimony as to promptness goes unchallenged. Herz and Saferstein have now testified that their complaints about promptness concerned the unavailability of the matching funds, and their testimony is both disinterested and uncontested. Accordingly, summary judgment is granted dismissing Kline's third affirmative defense, since it poses no genuine issue of fact that Citibank did not delay payments on its loan to Vogue.

### Disparagement of Vogue

■ Saferstein's deposition discloses that to the best of his knowledge, neither Citibank nor any of its employees ever disparaged Vogue (Saferstein Deposition at 115–16). Herz corroborates Saferstein (¶ 5, Herz Affidavit; see also, ¶ 10, Ciocca Affidavit). Rather than contest the record on this point, Kline suggests misbehavior by Exeter, a financial consultant hired by Vogue on the recommendation of Citibank, and attempts to attribute it to Citibank. This defense has already been rejected (see, Memorandum of September 30, 1975, at 5), and since Kline does not now raise an issue of fact as to Citibank's behavior, summary judgment is granted dismissing the fourth affirmative defense.

### Kline's Cross-Motion

In opposition to Citibank's motion and in support of his own cross-motion, Kline asserts that: 1) the bankruptcy composition was intended to be in full settlement of the Vogue debts and therefore discharged Kline as guarantor, and 2) Citibank's acceptance, pursuant to the order of bankruptcy, of $711,353.80 more than reimburses Citibank for the $537,500. loan that was the subject of Kline's guarantee, and accordingly relieves Kline of liability.

■ Kline argues that Citibank forfeited its right to proceed against him because it failed expressly to reserve that right in the course of the bankruptcy proceedings. Even if there were an issue of fact as to Citibank's explicit reservation of rights against Kline, his argument would nevertheless be meritless, because such a reservation exists "without express statement under the specific provisions of the Bankruptcy Act, § 16, 11 U.S.C.A. § 34." *Kelbey v. Manufacturer's Trust Co.,* 162 F.2d 350, 351 (2d Cir. 1947); *In Re North Church Street,* 82 F.2d 186, 188 (2d Cir. 1936); *United States v. George A. Fuller Co.,* 250 F.Supp. 649, 658 (D.Mont.1965); *Easton Furniture Manufacturing Co. v. Caminez,* 146 App. Div. 436, 437, 440, 131 N.Y.S. 157 (2d Dept. 1911).

Moreover, we find on the basis of the undisputed facts of this case, that there *was* an express reservation of rights. It is true that the proposed plan, which was given formal effect by the final order of the bankruptcy judge, recited that the terms of the composition were "in full payment and satisfaction of the Citibank Claim." (Proposed Plan, Exhibit 5 to Kline's 9(g) statement). However, that language must be read in light of the Proof of Claim, ¶ 10, and Citibank's acceptance of the proposed plan, (Ex. 1, Citibank's Opposing Affidavit) both of which reserved the bank's rights against all those who, like Kline, were not parties to the bankruptcy composition.[1] That is, the scope of the "claim" referred to

---

1. The reservation in the Proof of Claim reads as follows:

"10. Claimant hereby reserves all of its rights and remedies against (a) any other person, firm or corporation which may be liable to it for all or part of the claim described above; and (b) against any collateral upon which it presently holds a security interest . . . ."

Citibank's acceptance of the proposed plan contained similar language:

"This acceptance is filed without prejudice to any rights or remedies which the undersigned may have against any other person, firm or corporation who may be liable to the undersigned for all or any part of its claim against Debtor."

in the proposed plan is defined by the Proof of Claim, and the latter document clearly excluded obligations incurred by others than Vogue. Accordingly, the "full payment and satisfaction" clause on which Kline relies applies only to Vogue's obligations, not Kline's. Furthermore, it was not the proposed plan which the court confirmed, but the plan *as accepted* (see, Ex. 7, Kline's 9(g) statement). Since the plan as accepted contained an express reservation, the effect of the court's order was to preserve that reservation. In short, the bankruptcy proceedings have, from beginning to end, been limited to a redefinition of the liabilities of Vogue and do not affect Kline's liabilities to Citibank.

### The Application Argument

Kline contends further that whether or not his liability was extinguished by the terms of the bankruptcy order, Citibank's receipt of $711,353.80 (see Stipulation, Ex. 4 to Citibank's Opposing Affidavit), pursuant to the court order, must be applied to the $537,500. loan which he guaranteed. Such application, he claims, was anticipated by the parties to the oral loan agreement between Citibank and Vogue.

▉▉▉▉▉▉ Whatever the agreement between Vogue and Citibank may have been, however, it is irrelevant in the present circumstances. This is so because a debtor's right to apply payments exists only when the payments are voluntarily made. Where, as here, moneys are repaid under judicial order, the court has exclusive authority to apply the funds, and its application must be structured as "equity and justice require." *Bank of California v. Webb,* 94 N.Y. 467, 472 (1884); *accord, Orleans County National Bank v. Moore,* 112 N.Y. 543, 548, 20 N.E. 357, 359 (1889); *Wanamaker v. Powers,* 102 App.Div. 485, 491, 93 N.Y.S. 19, 22 (2d Dept. 1905), *aff'd,* 186 N.Y. 562, 79 N.E. 1118 (1906). Neither party has briefed the question of what application the court should make of the funds, in light of the requirement that equity and justice be served. Examination of the relevant cases reveals that where, as here, the debtor (Vogue) is liable on several debts to the creditor, the equitable solution is to apply repayments ratably, to all the debts:

"But in such a case as this, where neither party has applied the payment, and the moneys came from the course of judicial proceedings to enforce the security intended as such *for all the debts,* we think the weight of authority, as well as the equities of the case, call for application of the moneys arising in such judicial proceedings to all the debts *pro rata.*" (Emphasis in original)

*Orleans County National Bank v. Moore, supra,* 112 N.Y. at 556, 20 N.E. at 363, *accord, Lichtenstein v. Grossman Construction Corp.,* 248 N.Y. 390, 393, 394, 162 N.E. 292, 293 (1928); *Hanlon v. Union Bank of Medina,* 247 N.Y. 389, 391, 160 N.E. 650, 651 (1928); *Swerdin v. Coaltown Fuel Corp.,* 111 N.Y.S.2d 672, 675 (Mun.Ct. Bronx Co. 1952). Under the ratable reduction method, the $711,353.80 received by Citibank must be applied pro rata to each claim embodied in Vogue's total debt of $2,668,749.95. The computation should be made in the following manner:

| | | |
|---|---|---|
| 1) | $537,500. | [the guaranteed debt] |
| − | 150,000. | [amount collected, prior to bankruptcy from another co-surety.[2]] |
| | $387,500. | [debt subject to ratable reduction] |
| 2) | $387,500.00 | |
| | $2,668,749.95 | [total indebtedness of Vogue to Citibank] |
| X | $711,353.80 | [cash received by Citibank under bankruptcy plan] |
| = | $103,287.93 | [amount of ratable reduction] |
| 3) | $387,500.00 | [debt subject to ratable reduction] |
| − | $103,287.93 | [amount of ratable reduction] |
| | $284,212.07 | [the ratably reduced debt] |

---

**2.** See, Stipulation; December 1974 Affidavit of Michael Horgan, Assistant Vice President of Citicorp, ¶ 31.

Line 3) shows the amount of the debt for which Kline continues to be answerable, as guarantor. Because of the outstanding balance on the debt, $284,212.07, exceeds Kline's guarantee, $237,500. Kline is fully liable. In sum, it appears that Kline owes Citibank $237,500. together with interest on that amount, computed from December, 1973, if the method set out above is legally correct as we believe. Judgment is reserved, however, for fourteen days from the filing of this memorandum to permit the parties to submit memoranda as to whether the method described above is applicable in the circumstances and if not, what method and what computation is proposed. The memoranda should cite authority for any other method suggested.

It is so ordered.