## Kyle *v.* The Chattahoochee National Bank.

1. Where a promissory note is drawn by one person for the accommodation of another, and such note, together with like papers drawn by other persons to the order of the same payee, and other choses in action upon open account due to the payee, are by him assigned to secure the payment of an indebtedness by him to yet another person, which several items of indebtedness are each before assignment severally secured by a mortgage executed by the payee of such note to such other person, upon the understanding between the mortgagor and the mortgagee that the purpose of the mortgage is to save harmless such accommodation maker as well as to secure the mortgagee, the mortgage containing no direction as to the appropriation of the moneys arising from a foreclosure thereunder, and no other direction being given as to how and in what manner such moneys shall be appropriated to such several items of indebtedness, the law will so direct the appropriation to such items of the secured indebtedness as to give the accommodation maker the benefit of the security afforded by the mortgage, and, to that end, will apportion the money realized from the foreclosure ratably among the several items secured. Section 2869 of the code is applicable only in cases of voluntary payments by the debtor.

2. While one of such original debtors by accommodation note has the right to consent that the mortgagee shall apply to the discharge of the debt due by another of such original debtors that portion of the general fund which, under the rule above stated, would otherwise be appropriated to the payment of the former's debt, yet where the evidence is silent as to any such consent, it is error for the court to give to the jury instructions based upon such theory.

3. In a contest between creditors generally, some secured and others unsecured, if a secured creditor, who has taken a mortgage upon the property of the debtor given to secure the payment of accommodation paper drawn in favor of the debtor and delivered by the latter as collateral, in order to compound with unsecured creditors, surrenders his priority of lien upon a portion of the proceeds arising from the sale of the property of the principal debtor mortgaged to secure such accommodation paper, he will thereafter, in the settlement of his demands upon such paper held as collateral, be held to account to such debtors to the extent of his lien thus abandoned to other unsecured creditors.

4. A draft drawn generally by a debtor to the order of his creditor in part settlement of an open account, which account, together with other debts, has been secured by a mortgage, is not of itself alone an appropriation of money in the drawee's hands; and if, before its acceptance and payment, all funds of the drawer in the drawee's hands are assigned to the holder of such draft, and accepted by him as additional security for the payment of the entire account of which the draft represents a part, as well as security for the payment of other debts also secured by the assignment of such fund, the amount of the account represented in the draft will not be given a preference in the apportionment of the fund among the various debts to secure the payment of which it was assigned.

August 16, 1895.

Complaint on note. Before Judge WILLIS. City court of Columbus. April term, 1894.

McNEILL & LEVY and BRANNON, HATCHER & MARTIN, for plaintiff in error.

L. F. GARRARD and T. Y. CRAWFORD, *contra.*

ATKINSON, Justice.

The Paragon Manufacturing Company was indebted to the Chattahoochee National Bank in the sum of fifty-four thousand dollars. The several items constituting this indebtedness were, a note drawn by J. P. Kyle for the accommodation of the Paragon Manufacturing Company, and by it indorsed to the Chattahoochee National Bank; two other notes for similar sums were drawn by other persons in the same manner, and these were likewise indorsed to the Chattahoochee National Bank. These three notes were drawn by the respective makers for the accommodation only of the Paragon Manufacturing Company, and to be discounted by that company in connection with its business. Another item of said indebtedness consisted of a note for ten thousand dollars drawn by the Paragon Manufacturing Company in favor of the Chattahoochee National Bank, and the remaining fourteen thousand dollars consisted of an open account due by the Paragon Manufacturing Company to the bank. These several items were each secured by a

mortgage drawn by the Paragon Manufacturing Company in favor of the bank to secure this indebtedness and to protect and save harmless the accommodation makers of such three notes against ultimate loss on account thereof.   This mortgage was made subject to a pre-existing mortgage upon the same property, and of equal lien, effect and dignity with certain other mortgages executed upon the same date, but not necessary here to be described.   As additional security for the payment of said several items of indebtedness, the Paragon Manufacturing Company assigned to the bank certain choses in action and manufactured goods, of the aggregate value of thirty-one thousand dollars.   The item of fourteen thousand dollars, designated as open account, secured by the mortgage, consisted of a draft drawn by the Paragon Manufacturing Company against Frederick Vietor & Achilles in favor of the bank for six thousand dollars, and for amounts of overdrafts eight thousand dollars.  Before the draft for six thousand dollars was notified to the drawees and before its presentation or acceptance, all of the funds in the hands of the drawees were assigned to the bank by the Paragon Manufacturing Company, and accepted by the bank, according to the instrument under which the assignment was effected, as additional security for the notes and open account secured by the mortgage above referred to.   Certain creditors of the Paragon Manufacturing Company filed a petition praying the appointment of a receiver.   This petition was granted, and under it, all the property of the Paragon Manufacturing Company, including that which had been mortgaged as above stated, was taken possession of by the receiver.   The Chattahoochee National Bank, in this proceeding, foreclosed its mortgage.   This mortgage, however, having been assailed by unsecured creditors, the bank, with the consent of certain other of the creditors, parties to the

record—the present defendant not being one of them—compounded with the unsecured creditors, and paid them the sum of twenty-six hundred, sixty-four and 87/100 dollars, in consideration that they would abandon their attack upon the mortgage. This money being paid, the receiver thereafter, under the direction of the court, paid to the bank, for and on account of the mortgage which it held, the sum of twenty-six thousand, nine hundred and seventy-five and 14/100 dollars, the net sum received by the bank, under its mortgage and under the assignment of choses in action, aggregating thirty-nine thousand, five hundred and seventy-eight and 59/100 dollars; against which sum the bank claimed the right to deduct the sum paid to unsecured creditors in making a settlement with them. The bank claimed the right to appropriate the money received by it in the following manner: 1st, the amount paid by it to the unsecured creditors of the Paragon Manufacturing Company, $2,664.87; 2d, to appropriate exclusively to pay the draft held on Frederick Vietor & Achilles (included in said open account item hereinbefore referred to), $6,000.00; 3d, to appropriate exclusively to the payment of the note of Paragon Mfg. Co., $10,000.00; 4th, to appropriate exclusively to payment of note of W. H. Dismuke, $10,000; besides interest on the above sums; and it accordingly so appropriated it. Subsequently, the bank brought suit against the defendant, J. P. Kyle, on his note, which was the same one secured by the mortgage hereinbefore referred to. To this action by the bank, the defendant Kyle pleaded, amongst other things, that he was entitled to have the bank apply the sum received by it upon account of its mortgage ratably to the extinguishment of each of the several items of indebtedness secured thereby, without preference to either. Under the special verdict rendered, the jury found in favor of the defendant, that as to the sum paid

in settlement with the unsecured creditors the defendant upon his note was entitled to be credited with his *pro rata* share. As to each of the other issues, the finding was in favor of the plaintiff; that is, that as to the sum of ten thousand appropriated in extinguishment of the Dismuke note, the ten thousand appropriated in extinguishment of the note of the Paragon Manufacturing Company, and the six thousand represented by the draft on Vietor & Achilles, he was not entitled to participate, nor to have a *pro rata* share thereof applied in extinguishment of his note. Upon his note for ten thousand dollars the jury found against him a verdict for seven thousand, six hundred and twelve and 54/100 dollars.

1. The court, in substance and in effect, charged the jury upon the appropriation of payments in accordance with the rule laid down in section 2869 of the code; and refused to charge in accordance with the request of the defendant, that if they should believe from the evidence. that this mortgage was given to secure these several items of indebtedness, and for the protection of the accommodation makers, including this defendant, and was so accepted by the bank, the defendant's note, being one of the evidences of indebtedness so secured, would be entitled, as a matter of law, to participate *pro rata* in the distribution of the fund arising therefrom, without reference to any direction given by the Paragon Manufacturing Company, or any appropriation made by the bank in the absence of such direction by the Paragon Company. We think, under the facts as they appear in this record, the request should have been given, and that it stated the true rule of law applicable to cases of this character. It will be observed from an examination of the record, that at the time the bank accepted the note of this defendant, it knew that he was an accommodation maker only, and was in no sense interested in the consideration of the note. It knew that one of

the purposes intended to be accomplished by the execution of the mortgage, was to secure the defendant from loss as an accommodation maker. The president of the bank himself testified that the mortgage was executed to protect this note along with others included in the mortgage. When the bank accepted the mortgage, it assumed along with the security the duty of executing the trust resulting from the considerations which led up to its execution. Each of these accommodation makers had a vested interest in all sums which should be realized upon the foreclosure of the mortgage. The mortgage itself was equivalent to an appropriation in advance of the fund. Each of these parties, according to the evidence of the president of the bank, was to be equally protected; and it would be impossible to afford equal protection to them all, unless the fund were divided ratably among the several items of indebtedness secured, it being insufficient to extinguish them all. The rule stated in the code, section 2869, *supra*, has no application to the distribution of funds resulting from judicial proceedings. It provides for the appropriation of money voluntarily paid. In such a case, the debtor may direct how it shall be applied. If he fail so to do, the creditor may elect how he will appropriate it. If no direction be given by the one or no election made by the other, the law will appropriate it in such manner as is reasonable and equitable, both as to parties and third persons. This provision deals with the appropriation of funds as between the debtor and creditor alone, but cannot reach cases like the present, where there is a supervening equity in favor of a third person established by the execution of the instrument under which the money was realized, and which was, after the execution of the mortgage, superior to the right of direction by the mortgagor and superior to the right of election by the mortgagee. After the execution of this mortgage,

it would have been impossible for the mortgagor to have given direction for the appropriation of this money in any other manner than ratably between the makers of these notes, without the consent of the makers. At the moment he executed the mortgage for the benefit of the makers of the notes and to protect them against loss, he parted with his right to give direction which would be prejudicial to their interest. So likewise, when the mortgagee accepted the mortgage executed for this purpose, he was concluded as to any right of election in the matter of appropriation of the fund inconsistent with the purposes for which the trust was created. It is a rule of general acceptance and recognized authority, that in all cases where money is raised by judicial process, it shall be appropriated among claims of equal dignity ratably. It would be inequitable and unjust to allow the mortgagee to so appropriate the fund thus realized as to deprive these accommodation makers of the benefit of the security afforded them by the mortgage.

2. Upon the subject of the appropriation of payments, the court further charged the jury as follows: "It is insisted on the part of Kyle (the defendant) that when the notes secured by this mortgage were made, W. H. Dismuke stood in the same position that he, Kyle, stood, that the mortgage was given to secure all, and that the bank had no right, upon receiving this money from the sale of this mortgaged property, to appropriate it to the full payment of Dismuke's note, to his, Kyle's, disadvantage. I charge you, gentlemen of the jury, that the law on that—in the first place, look and see whether or not Mr. Kyle ever assented to that. Did Mr. Kyle ever agree by words or acts, did he ever ratify it after it was done—agree that the note of W. H. Dismuke should be paid in preference to his? If he did, why then you need not go any further—if you believe that,—because Mr. Kyle could not come afterwards and say, you paid

all of Dismuke's note when you ought to have pro-rated it on mine. If he agreed to it, if he assented to it, if he gave any directions whatever to the Chatta-hoochee National Bank to pay that note in preference to his, then he could not come in afterwards and say that you should prorate it on mine, because there would be a direction on his part." This charge we think was erroneous, for the reason that there was no evidence which we can find in the record to justify it. While, as a matter of abstract law, it is undoubtedly true that Kyle would have the power to waive his right to a *pro rata* distribution of the fund in favor of any of the ac-commodation makers likewise secured by the mortgage, so as to authorize the appropriation of such portion of said fund, as otherwise would be appropriated to his note, to the extinguishment of the note of such other accommodation maker, where there is no evidence of such authority, express or implied, deducible from the evidence as it appears in the record, the court should not have submitted such a theory. It could have had only the effect to mislead the jury, and it was conse-quently error.

3. The defendant claimed that he was entitled to be credited upon his note with his *pro rata* share of a cer-tain sum of money amounting to twenty-six hundred and sixty-four and 87/100 dollars which was realized by the bank under the mortgage which it held and the assignment of choses in action and chattels, and which was appropriated by the bank to the payment of unsecured creditors; and as to this fund, the bank denied that this defendant was entitled to participate *pro rata*. It ap-pears that the bank, in its proceeding to foreclose its mortgage, encountered bitter antagonism at the hands of certain unsecured creditors, who assailed its securities as fraudulent; and in order to compound with these un-secured creditors, the bank agreed to pay to them, and

did pay to them, out of the sum realized by it the sum above stated. This action of the bank was without the consent of the defendant Kyle. It was with the consent of certain other creditors of the Paragon Manufacturing Company. We do not think the bank could thus appropriate any portion of the fund to the prejudice of this defendant, without his consent. Whether or not it was a profitable investment for it to have made of the fund it held in trust for the benefit of these accommodation makers, is not the question. Its right to so disburse the money is dependent upon strict law, and the law of such a right is the will of the man whose security is being impaired. It took the liberty of disbursing the money without consulting the person holding the beneficial interest therein, and therefore, in accounting with this defendant, for whose benefit the mortgage and assignment was made, it must account to him for his *pro rata* of that fund disbursed without his consent.

4. The Paragon Manufacturing Company, it appears, drew a draft for six thousand dollars in favor of the bank upon Frederick Vietor & Achilles, merchants with whom the Paragon Company had some dealings in the city of New York. There is intimation in the record, that this draft was what is termed in commercial parlance a dummy; that at the time of its execution it was not designed to be either presented, accepted, or paid, but was executed for the convenience of the bank in its settlements and in making a statement of its accounts. However this may be, we find sufficient evidence in the record to justify its treatment as a *bona fide* existing indebtedness, representing a portion of an open account of fourteen thousand dollars. The drawees of this draft were the factors of the Paragon Manufacturing Company, who held in their hands considerable assets belonging to that company. After the draft was drawn,

but before the drawees were notified that it had been drawn, before its acceptance or payment, the Paragon Manufacturing Company executed the mortgage hereinbefore referred to, in which, among the items of indebtedness to be secured thereby was an open account of fourteen thousand dollars, of which open account the draft in question constituted a portion. The Paragon Company likewise, before the presentation of the draft, as additional security for the payment of the several items of indebtedness secured by the mortgage, made a general assignment to the bank, the holder of the draft, of all its assets, rights and credits in the hands of Frederick Vietor & Achilles, the drawees of the draft. The bank, being in possession of the draft, accepted, without qualification, this assignment; and we think that this unqualified acceptance of the assignment amounted to an assent upon its part to the appropriation, by the drawer, of the fund designed in the first instance to be applied to the payment of the draft, to other purposes inconsistent with that for which the draft was drawn; for, as the assignment was made as additional security to that furnished by the mortgage, each of the items of indebtedness secured by the mortgage was as much secured by the assignment as the open account of which the draft constituted a part. The mere drawing of the draft was not such an appropriation of the funds in the hands of the drawees as that such funds could not, before the acceptance of the draft, be by the drawer devoted to another use; and inasmuch as such funds in the present case were in fact, as we have seen, with the assent of the holder of the draft, appropriated to a purpose inconsistent with the idea of the full payment of the draft, in the distribution of the funds coming into the hands of the latter, the sum represented in the draft occupies the same position as a part of the open account as though the draft had never been drawn.

Upon a review of the whole case, we are fully per-
suaded that this defendant is entitled, as a matter of
right, to participate *pro rata*, and without preference to
either, with each of the several items of indebtedness
secured by the mortgage, in the distribution of the entire
sum realized by the bank upon account of the mort-
gage and upon account of the assignment of the choses
in action, which was made as additional security to the
mortgage.   The mathematical problem involved in this
case is one easy of solution, and the learned counsel will
doubtless find no difficulty in agreeing upon a verdict,
fixing, in accordance with the principles above an-
nounced, the extent of the liability of the defendant
upon the note upon which this suit is based.

*Judgment reversed.*