9094.   CITIZENS & SOUTHERN BANK *v.* ARMSTRONG.

1. The statutory provision to the effect that when a debtor makes a payment to a creditor holding several demands against him, and fails to direct how it shall be applied, the creditor may at his election appropriate it to any of them, relates to voluntary payments only. Where funds are distributed in judicial proceedings, "the law will direct the application in such manner as is reasonable and equitable, both as to parties and third persons."   Civil Code (1910), § 4316.

2. The court did not err in holding that a dividend paid to the plaintiff in fi. fa. on several demands against the Irish-American Bank, including the execution against the bank as principal and Armstrong as surety, should be applied ratably to all of these demands (and not exclusively upon the other and unsecured demands held by the creditor, at the creditor's sole option or selection), notwithstanding no election had been made by the principal debtor, and although a surety would not ordinarily be empowered to direct the application of a voluntary payment made to such creditor by his principal or another.

DECIDED APRIL 9, 1918.

Affidavit of illegality of execution; from Richmond superior court—Judge H. C. Hammond.   June 23, 1917.

*Wright & Wright,* for plaintiff in error.

*P. C. O'Gorman, Pierce Brothers,* contra.

WADE, C. J.   This case arose on an affidavit of illegality, in which it was alleged that a certain execution issued from the superior court of Richmond county "in favor of The Citizens & Southern Bank against the Irish-American Bank, maker, and Patrick Armstrong, as surety," and levied by the sheriff upon certain described property of Armstrong, was proceeding illegally for the reason that Armstrong had paid the balance in full due on the execution.   The bill of exceptions sets out the issues to be determined as follows: "Plaintiff, Patrick Armstrong, set up in his affidavit of illegality that The Citizens & Southern Bank had received from the receiver of the insolvent estate of the Irish-American Bank, the principal debtor, a dividend of 8 per cent. upon the debt on which he was surety, amounting to $3,164.82, which should have been credited on the said debt upon which he was

surety, but which the said The Citizens & Southern Bank under-
took to credit, and did credit, upon another debt due by the said
Irish-American Bank to said The Citizens & Southern Bank, which
was not secured; that if said The Citizens & Southern Bank had
so credited the said sum upon the debt upon which said Armstrong
was surety, there would remain nothing due after said payment by
the surety of the $28,268.37 above mentioned. The Citizens &
Southern Bank in its answer to said affidavit of illegality and in
open court admitted that it had received from the receiver of the
insolvent estate of the Irish-American Bank, the principal debtor,
eight per cent. dividend upon the total indebtedness due by said
Irish-American Bank to the said The Citizens & Southern Bank on
three separate debts, which, in the aggregate, amounted to $84,-
855.25, one item of which indebtedness was the $43,955.79, con-
stituting the debt upon which the said Patrick Armstrong was
surety; and that the said The Citizens & Southern Bank credited
the entire amount of said dividend to one of said items of indebt-
edness other than the debt secured by Patrick Armstrong. It fur-
ther admitted in its said answer that 8 per cent. of the debt on
which Patrick Armstrong was indorser would amount to the sum
of $3,164.82, and that if the said The Citizens & Southern Bank
did not have the right to credit said sum as it did, but should
have credited it as contended for by Patrick Armstrong, then the
said Patrick Armstrong is not indebted to it in any sum whatso-
ever, but that the execution and judgment in question is paid
and the debt fully satisfied, principal, interest, attorney's fees,
and the court costs. Plaintiff in fi. fa. in its answer to the affi-
davit of illegality showed that the correct amount due it by the
Irish-American Bank was $84,855.25; separate judgments therefor
being as follows: (1) Judgments on note (secured partially by
collaterals), $29,265.50; (2) judgments balance on overdraft (un-
secured), $11,633.86; (3) balance on note indorsed by P. Arm-
strong, $43,955.79.

"The Irish-American Bank became insolvent, and its affairs
were placed in the hands of a receiver, at the suit of the State of
Georgia. In the administration of the estate the receiver declared
a dividend of 8 per cent. to the general creditors of the insolvent
bank, and among them The Citizens & Southern Bank received its
dividend of 8 per cent. on the aggregate claim of $84,855.25, or

$6,786.42. The Citizens & Southern Bank applied this as a credit on its unsecured claim represented by the overdraft. Patrick Armstrong, in his affidavit of illegality, contends that this 8 per cent. dividend received by The Citizens & Southern Bank should have been credited ratably upon the three separate items of indebtedness above mentioned,—that is to say, $3,164.89 of the sum paid over by the receiver to the bank should be applied to the payment pro tanto of the particular judgment on which he is surety, thereby reducing by that sum his obligation as surety. The Citizens & Southern Bank denied that there is any rule of law or equity in the State requiring such an appropriation of payment, and contended it had the right under the law to apply the payment to the claim represented by the overdraft. The said cause was heard upon the affidavit of illegality and the answer and the admission in open court as above stated, by his honor Judge Hammond, without a jury, counsel in open court agreeing thereto. At the conclusion of the argument his honor rendered a judgment sustaining the affidavit of illegality, as follows, to wit: The foregoing affidavit of illegality coming on to be heard before the undersigned judge without a jury, the jury having been waived, after hearing the evidence and argument of counsel the same is hereby sustained in open court. 23rd day of June, 1917. Henry C. Hammond, J. S. C. A. C.

"To this judgment of the court defendant excepted and now excepts and assigns error thereon, and says that the court erred in sustaining the said affidavit of illegality and in not holding that The Citizens & Southern Bank had the right to apply said payment by the receiver of the Irish-American Bank to the unsecured indebtedness of the said insolvent bank to The Citizens & Southern Bank represented by overdraft, because: (1) It was an older debt. (2) It was an unsecured debt. (3) The creditor, in the absence of instruction to the contrary, has the right to elect to which debt the payment shall be appropriated. (4) If the creditor did not have this right, the court should direct the application in such manner as is reasonable and equitable, both as to parties and third persons, observing the general rule that such application should be made to the older and to the unsecured or least secured debt. (5) A surety or guarantor on one of the notes or debts has no right in law or in equity whereby he may compel the creditor to apply all

or any part of such payment to the debt on which he is surety; on the contrary, his obligation to the creditor as surety is to pay the entire debt; and to apply any part of this 8 per cent. dividend to the Armstrong debt would be to release him pro tanto from the obligation of his contract as surety and to deprive the payee to that extent of the security he took when he extended the credit."

When this case was before the Supreme Court for the determination of another question (*Citizens & Southern Bank* v. *Alexander*, 147 *Ga.* 74 (92 S. E. 868), it was held by that court: "Where a creditor of an insolvent bank holds collateral security for a portion of the debt, and the receiver of the bank realizes from its assets an amount of cash to be applied on its debt, the creditor is not entitled to a dividend upon the entire indebtedness due, as though he had no collateral. Such secured creditor must first apply the amount realized from the collateral to reduce the amount of indebtedness, and is entitled, like other creditors, to a dividend upon the unpaid balance." The point now at issue was not involved in the previous adjudication.

Section 4316 of the Civil Code is as follows: "When a payment is made by a debtor to a creditor holding several demands against him, the debtor has the right to direct the claim to which it shall be appropriated. If he fails to do so, the creditor has the right to appropriate at his election. If neither exercises this privilege, the law will direct the application in such manner as is reasonable and equitable, both as to parties and third persons. As a general rule, the oldest lien and the oldest item in an account will be first paid, the presumption of law being that such would be the fair intention of the parties." It is conceded in the brief of counsel for the plaintiff in error that "there is nothing in the record to show that the unsecured claim to which the payment was applied was older than the claim upon which the defendant in error was endorser." It is broadly held in *Kyle* v. *Chattahoochee Nat. Bank*, 96 *Ga.* 693 (24 S. E. 149), that the code section quoted above (Code of 1882, § 3722) "is applicable only in cases of voluntary payments by the debtor." In the decision the court said: "The rule stated in the Code . . , supra, has no application to the distribution of funds resulting from judicial proceedings. It provides for the appropriation of money voluntarily paid. In such a case, the debtor may direct how it shall be applied. If he

fails so to do, the creditor may elect how he will appropriate it. If no direction be given by the one or no election made by the other, the law will appropriate it in such manner as is reasonable and equitable, both as to parties and third persons. This provision deals with the appropriation of funds as between the debtor and creditor alone." The statute itself provides that if neither the debtor nor the creditor exercises the privilege of appropriating payments to one or more of several demands held by the creditor, the law will direct the application in such a manner as is equitable and reasonable, "both as to parties and third persons." In *Hargroves* v. *Cooke,* 15 *Ga.* 321, 322, (7), the court said: "If neither debtor nor creditor apply the payment, the duty of doing so devolves upon the court, who will make such application as is reasonable and equitable." The court further said (p. 329): "In all cases, if the parties, themselves, have omitted to make any specific appropriation of payments, the law will appropriate them according to the justice and equity of the case, for the benefit of both parties."

In this case the payment applied by the plaintiff in execution to unsecured demands held by it against the Irish-American Bank was not a voluntary payment made by the principal debtor, or by any other person for it, but was made to the creditor as a dividend upon the aggregate sum of all demands held by it against the Irish-American Bank, including the particular demand secured by the indorsement of Armstrong on which it sued to judgment. In determining the precise amount the receiver should pay to the Citizens & Southern Bank in compliance with the order of the court fixing the amount of such dividend at 8 per cent., it was necessary to include the demand which was secured by the indorsement of Armstrong, as well as the remaining claims in favor of the Citizens & Southern Bank which went to make the total sum of its claim against the insolvent bank. The money was not paid by the receiver in accordance with any agreement or direction on the part of the principal debtor or the surety, but was paid over to the plaintiff in fi. fa. in pursuance of the order of the court, without any agreement by the principal debtor, to which the surety assented, that it should be applied to one or more of the unsecured demands. It would be manifestly inequitable to allow the application of that part of the sum paid by the receiver

to the creditor as a dividend on the secured claim to be applied to any other claim whatsoever, but, regardless of this, under the plain and precise ruling in the *Kyle* case, supra, as well as under that in the *Hargroves* case, supra, the court was authorized to make a reasonable and equitable application which would fairly protect the interests of all parties and third persons.

It is insisted in the brief of counsel for the plaintiff in error that the "third persons" referred to in the *Hargroves* case and contemplated by section 4316 of the Civil Code, supra, "are creditors whose rights and liabilities arise outside of the debt under discussion, and not sureties or guarantors of that debt." Even conceding the correctness of this position, the statute expressly authorizes the application of payments by the court in the circumstances under review in such manner as may be equitable "both as to *parties* and third persons;" and at all events Armstrong was a party in fact as well as in name in this case, in whose behalf the court might direct the application of payments in such a manner as to protect his equitable rights.

It is likewise argued that it is too late for either party to insist on the right to appropriate payments at the time of trial, but no appropriation of any *voluntary* payment is sought to be made by the surety in this case, the affidavit of illegality being interposed by him to compel the ratable application of a payment made by virtue of judicial proceedings. The fund in question being paid over under order of the court as a dividend upon various demands held by the plaintiff in fi. fa., including the execution levied, and the application of the amount so paid having been made solely at the option of the plaintiff in fi. fa., it is apparent that the surety would not necessarily have been apprised of the fact that the proportion ratably applicable to the execution against him had not been so applied until the levy of the execution, nor would he have had an opportunity to object to the application made, except by affidavit of illegality interposed when notice of the levy for the entire amount of the fi. fa., without allowing the credit claimed thereon, was brought to his attention.

We think, therefore, that the trial judge did not err in sustaining the affidavit of illegality.

*Judgment affirmed. Jenkins and Luke, JJ., concur.*