IN THE

# Supreme Court of the State of Georgia,

## AT MACON,

## JANUARY TERM, 1861.

---

PRESENT—JOSEPH H. LUMPKIN,
RICHARD F. LYON, } JUDGES.
CHARLES J. JENKINS,

---

### HORNE vs. PLANTERS' BANK OF GEORGIA.

Where the testimony in support of the verdict greatly outweighs that against it, a new trial will not be granted, of course on the ground that the verdict is against the weight of evidence.

When there are several items of indebtedness, the debtor has the right to make the application of payment; and failing to do so, the right devolves upon the creditor to appropriate the payments.

Complaint in Dougherty Superior Court. Tried before Judge ALLEN, at the June Term, 1860.

This was an action brought by the Planters' Bank of Georgia, for the use of John W. Rabun against Charles W. Horne, as endorser, to recover the amount of a promissory note, of which the following is a copy :

Horne *vs.* Planters' Bank of Georgia.

"LAURENS COUNTY, GEORGIA, Nov. 25, 1851.

"Sixty days after date I promise to pay to the order of Charles W. Horne, two thousand dollars, at either of the banks in Savannah, for value received.

"ANDREW Y. HAMPTON."

Endorsed as follows:

"C. W. HORN."

"RABUN, FULTON & Co."

To this action the defendant pleaded that the note was given to the firm of Rabun, Fulton & Co., as an accommodation paper, to be used by them in bank, and if Rabun, Fulton & Co. did not otherwise arrange for its payment, it was agreed between said firm and Hampton and the defendant, that if defendant would endorse the note, he should be secured against liability thereon, as follows: That Hampton's cotton crop, which was large, was to be sent forward to said firm, and that the proceeds of the sale of the cotton should be by said firm applied to the payment of the note; that Hampton did, after said note was given, and before it matured, send forward three or four hundred bales of cotton to said firm, with instructions to apply a sufficiency of the proceeds of the same to the payment of the note; that the firm received and sold the cotton, and retained enough of the proceeds thereof to pay the note, and instead of so applying the money, they pretend that it has been applied to other debts of Hampton, in violation of the agreement and contract under which defendant was induced to endorse the note. The defendant also pleaded that Hampton and defendant were both sued on the said note in Baker Superior Court, and that at the May Term, 1855, of Dougherty Superior Court, to which the case had been transferred, the plaintiff obtained a verdict, judgment and *fi. fa.* against said Hampton and defendant for fifteen hundred and thirty-five dollars, with interest and cost of suit.

On trial of the case in the Court below, the plaintiff introduced, as evidence, the note sued on, and proved by William J. Bullock, that on the 27th day of January, 1852, as Notary Public, the witness noted the promissory note sued on for

non-payment, and gave the defendant, as endorser, notice of the same, by mailing the notice in the post office at Savannah, addressed to said defendant at Dublin, Laurens county, Georgia, on the said 27th of January, 1852.

The plaintiff then rested.

The defendants read in evidence the answers of ANDREW Y. HAMPTON, to interrogatories taken out in said case, who testified: That the defendant released him from all liability for costs in said case; that the note sued on was given by witness to the firm of Rabun & Fulton for witness' own benefit; that Horne signed said note as endorser, on condition, and with the understanding, that out of the money arising from the sale of witness' cotton crop to be sent to Rabun & Fulton, the note should be paid; witness thinks the note was delivered to the firm of Rabun & Fulton, with the understanding that the proceeds of the cotton were to be first applied to the payment of the note; that after the note was made, witness sent to Rabun & Fulton his cotton crop, amounting to between one hundred and forty and one hundred and fifty bales, or, if he did not send that much, he sent at least enough to pay the note; he thinks he sent all, as he does not recollect dividing his crop that year, and enough of the proceeds of the cotton so sent to Rabun & Fulton was to be applied to the payment of the note endorsed by Horne; that the cotton was sold, and the witness supposes must have netted at least $4,000 00; that witness did not know but what such application of a part of the proceeds of the cotton to the payment of the note was made, until after he had moved a second time to Baker county, and returned with defendant to Laurens county, and then learned, to his astonishment, that the note had not been paid; that Rabun & Fulton received the cotton in the year 1850 or 1851, the witness does not recollect which; that there were one hundred and forty-eight bales, if he sent all his crop, and he thinks he did; that he does not recollect what the cotton sold for, but thinks the net proceeds must have been at least $4,000; that he does not recollect whether Rabun & Fulton furnished him with an account of the sale of the cotton or not, but thinks he moved

to Baker county before he received it, if he ever did; that he does not recollect anything of a settlement with Rabun & Fulton, but supposes he received an account of the sale of the cotton, and, perhaps, how the account stood between them, but has no recollection of it at this late date; that he does not recollect promising to send said firm all his crop, but promised a part, and may have sent all; that he is pretty sure he did whatever he promised to do, which he thinks was done at the time the note was endorsed; that he did not owe the firm anything when the note was given, but thinks it was the first dealing between them; that he cannot say how much he owed them at the sale of the cotton, but supposes that he owed them for bagging, rope, sugar and coffee, etc., sufficient for his plantation for the season previous to the sale of the cotton; that the cotton was not under advance to any one when it was sent to Rabun & Fulton, nor did they pay anything to to any one for the witness that he now recollects.

Here the defendant rested.

The plaintiff, in rebuttal, read the depositions of WILLIAM S. BRANTLY, who testified: That from early in March, 1851, until the last of July, 1852, the witness was book-keeper for the firm of Rabun & Fulton, and, as such, had access to all the business letters of the firm, kept the letters and orders on file, entered all notes received by them, collected their cotton bills, made deposits when instructed to do so, and, in short, did everything and knew everything relative to their accounts that any book-keeper knows about the accounts he is keeping; that A. Y. Hampton was a customer of said firm, bought groceries from them frequently, got them to negotiate his paper with the bank, and sent them cotton to sell; that witness kept the accounts between them; that about the 1st of December, 1851, Hampton owed the firm of Rabun & Fulton about $3,500 for cash purchases and sight drafts which had been cashed by said firm; that Hampton promised to send cotton enough in a short time to reimburse the firm for the cash they had advanced for him; that they then had on hand some cotton for Hampton, and waited to be put in funds for their advances; that Hampton gave the note

sued on, which was endorsed by Horne, to have the same dis-
counted at Hampton's expense, to place said firm in funds
for the cash purchases and sight drafts aforesaid; that the
proceeds of the note, when discounted, together with the cot-
ton on hand, or likely to be in a few days, would about bal-
ance Hampton's account with the firm; that Hampton prom-
ised to ship to the firm cotton enough, by the time the note
fell due, to pay it off, without further advances from said
firm; that Hampton failed to send the cotton, and Rabun &
Fulton advanced two thousand dollars to withdraw the note
from the bank; that the witness well remembers this, having
made an entry of it in red ink on the cash book, the 27th of
January, 1852, and the firm held the note as cash, and it was
not charged to him, as will be seen from the account herein-
after set forth; that the note was not paid whilst the witness
was in the employment of Rabun & Fulton, neither did the
witness receive any order from Hampton, or any one else, to
apply the proceeds of any cotton exclusively to the payment
of said note, any more than to any other advance or debt due
the firm; the account hereinafter given shows the proceeds of
all the cotton ever received by the firm from A. Y. Hamp-
ton, who was fully informed as to how the proceeds of the
cotton were applied; that witness knows of no objection from
Hampton as to the money his cotton brought; that if any
orders had been given to the firm relative to said note, and
its payment out of any particular cotton, the witness must
have known it, as the firm fully informed him, as their book-
keeper, concerning their accounts; the witness' attention was
frequently called to the note, and he well remembers that said
firm had no cotton funds on hand to meet this note, for weeks
before it fell due, except a small amount of less than one
hundred dollars; the note sued on is not embraced in the
account, but was held as cash; the witness cannot say how
much cotton was received by Rabun & Fulton after the date
of the note; the credits on the account current shows fifty-
six bales, but some twenty-five bales of this, the witness
knows, was received and sold before the note was made, but
not credited until after the note was made, and the cotton on

hand, with that which Hampton promised to deliver in a few days, and that that had been sold, was about enough to balance his account, counting the note as cash; that the witness knows Hampton gave no special order about the payment of this note out of any particular cotton. because if such order had been given, he must, from his connection with the firm, have been informed of it; the following is a copy of the account current, to-wit:

*Dr.   A. Y. Hampton in account with Rabun & Fulton :*
    1851.

| | | | |
|---|---|---:|---:|
| February | 25. To cash paid son,............................................$2,386 49 | | |
| March | 15. To sundries, as per bill rendered,....... | 174 44 | |
| " | 18. To cash paid draft,........................... | 40 00 | |
| April | 12. To sundries as per bill rendered,........ | 148 07 | |
| June | 5. To cash paid note,......:................... 2,500 00 | | |
| " | 14. To sundries, as per bill rendered,...... | 166 02—2,667 02 | |
| | | | $5,412 02 |

*CONTRA.*                    CR.

| | | | |
|---|---|---:|---:|
| February | 20. By proceeds of note discounted,........... 2,385 49 | | |
| May | 28. "    "    "    "    "    .........2,495 91—4,881 40 | | |
| July | 1. Transfer of amount of balance to new | | |
| | account,.................................... | | 530 62 |
| | | | $5,412 02 |

*Dr.   A. Y. Hampton in account with Rabun & Fulton.*
    1851.

| | | | |
|---|---|---:|---:|
| July | 1. To balance due transferred to new account,.................................... | | $530 62 |
| " | 15. To sundries, as per bill rendered,...... | 10 54 | |
| " | 28. To acceptance from N. Roventhall,.... | 293 38 | |
| " | " To commission on same, 2½ per cent,.. | 5 87— | 309 79 |
| Sept. | 6. To sundries, as per bill rendered,..... | 133 92 | |
| " | 25. To    "    "  '.  "    " | 21 27— | 155 19 |
| " | 27. To cash paid draft to Washburne Netts, | 100 00 | |
| " | " To commission on same, 2½,............. | 2 50— | 102 50 |
| October | 6. To sundries as per bill rendered,........ | 133 22 | |
| " | 13. To acceptance in favor of Lipman,..... | 81 40 | |
| " | 21. To sundries, as per bill rendered,...... | 121 85 | |
| " | 24. To acceptance in favor of S. Roventhall,............................ | 226 25 | |
| " | 24. To commission on same, 2½,......... .... | 5 66 | 568 39 |

Horne *vs.* Planters' Bank of Georgia.

| | | | | | | |
|---|---|---|---|---|---|---|
| Nov. | 8. To cash paid draft to S. A. Duval,...... | 286 | 77 | | | |
| " | 11. To " " " " P. & Co.,.......... | 200 | 31 | | | |
| " | 12. To " son, net proceeds of draft,...... | 2,351 | 39 | | | |
| " | " To commissions for negotiating same, | 60 | 00 | | | |
| " | 26. To cash paid his note,.....................2,587 | | 50 | | | |
| " | 28. To acceptance 30 day draft,.............. | 800 | 00 | | | |
| " | " To cash paid 30 days interest on same, | 4 | 66 | | | |
| " | " To commission for acceptance,.......... | 20 | 12— | 6,310 | 75 | |
| Dec. | 27. To sundries, as per bill rendered,........ | 19 | 77 | | | |
| 1852. | | | | | | |
| January | 27. To commissions for advancing $2,000 for note this day protested,............ | 50 | 00 | | 67 | 76 |
| | | | | | $8,134 | 71 |

*CONTRA.*

1851.

| | | | | | | |
|---|---|---|---|---|---|---|
| Nov. | 12. By proceeds of draft discounted,.........2,411 | | 39 | | | |
| " | 22. By seventy-six bales cotton,..............2,066 | | 28— | 4,477 | 67 | |
| Dec. | 3. By proceed of your note discounted this day,.........................1,978 | | 62 | | | |
| 1852. | | | | | | |
| January | 9. By fifty-six bales cotton,........ ...........1,654 | | 90 | | | |
| July | 22. By one " " ................... | 23 | 52— | 1,678 | 43 | |
| | | | | | $8,134 | 72 |

Here the plaintiff again rested, and the defendant introduced PETER J. STROZIER, Esq., who testified : That in a former suit on the note sued on in the present action, a verdict was taken for $1,500, the witness having been informed by Rabun & Fulton that there was a balance to be credited on the note, and Hampton stating to witness that it was $500, or in that neighborhood, and when he obtained the verdict, Hampton said it was right, or all right.

The testimony closed, and after the presiding Judge had charged the jury, amongst other things, as stated in the motion for a new trial, the jury returned a verdict for the plaintiff for $1,912 29, and interest from the 25th January, 1852, with costs of suit.

Counsel for defendant then made a motion for a new trial on the following grounds, to-wit:

1st. Because the verdict of the jury is contrary to evidence and without evidence.

2d. Because the jury found contrary to, and in perfect disregard of, the following charge of the Court : "That if the evidence showed that it was a condition of Horne's endorsing the note, that Rabun & Fulton should apply the first proceeds of Hampton's crop of that year to the payment of this note, and Rabun & Fulton were notified of the contract, and that any cotton had been sent to Rabun & Fulton after the making of the note, by Hampton, or was on hand at the time of the making of the note, belonging to Hampton, out of the then crop, the proceeds should have been applied to the payment of the note in suit ; if enough to pay the whole note, Horne was discharged ; if not the whole to the amount the cotton brought, what that might be." And defendant alleges that the evidence showed at least fifty-seven bales were received and on hand at the time of making the note.

3d. Because the Court charged the jury, "That it was incumbent on the plaintiff to prove demand of payment and notice of protest, after maturity of the note, in order to charge the defendant ;" and the defendant alleges that there was no evidence that this identical note had ever been protested, or that the defendant had ever been notified of the protest.

4th. Because plaintiff's counsel, in conclusion, mis-stated the testimony to the jury, in representing "that Hampton, in his depositions, had stated that at the time of making said note, he did not owe the firm of Rabun & Fulton anything, and that the witness, Brantly, stated he owed them $3,500 at that time," which, by reference to Brantly's depositions, will more fully appear. The fact being that Rabun & Fulton were in debt to Hampton a balance of $87 29 when the note was made.

5th. because the verdict of the jury is contrary to law.

The presiding Judge refused the new trial, and that decision is the error alleged in the record in this case.

MORGAN for plaintiff in error.

VASON and STROZIER for defendant in error.

Horne *vs.* Planters' Bank of Georgia.

*By the Court.*—LUMPKIN, J., delivering the opinion.

Is the verdict in this case so strongly and decidedly against the weight of evidence as to constrain this Court to grant a new trial, notwithstanding an application for this purpose was refused by the Circuit Judge who heard the cause? This is the only question argued before this Court.

It is immaterial whether it was the understanding or not, between Horne and Hampton, at the time the note sued on was endorsed, that the proceeds of Hampton's cotton crop forwarded to Rabun & Fulton, to whom the note was given, should be applied to its payment, unless notice was communicated to Rabun & Fulton, they cannot be affected by the agreement; and, on the other hand, if Hampton directed them so to appropriate the cotton, they were bound by his instructions.

The trouble is, there is not only the want of satisfactory and sufficient proof that Hampton gave such directions, but there is the positive testimony of Brantly, the book-keeper of Rabun & Fulton, and who transacted this whole business, that no such directions ever were given. And there are strong corroborating circumstances, as well as this direct evidence, against the defence.

I copy, *verbatim,* the testimony of Andrew Y. Hampton, the only witness sworn in support of the defence. He says: "The note, the foundation of this suit, was given to Rabun & Fulton, and given by witness, and given for the purpose of witness' own benefit. Horne was only bound as endorser, and signed it as such. Defendant signed it upon condition and understanding that out of the proceeds of witness' cotton, that should be sent to Rabun & Fulton, the note should be paid; witness *thinks* the defendant delivered the note to payee upon the understanding and agreement that Rabun & Fulton was to apppropriate the proceeds of the first of witness' crop to the payment of the note."

Correct the manifest and manifold mistakes in the depositions of witness, as taken down, and assume what is likely true, that Mr. Hampton meant to swear that he *thinks* he

delivered the note to Rabun & Fulton with the understand-
ing that the first of his cotton crop was to be appropriated to
the payment of this note.    Testimony thus doubtingly given,
if uncontradicted, would be too weak to control the finding
of the jury in a case like this.    Indeed, while we would not
impute to Mr. Hampton a want of veracity, as it respects this
transaction, yet it is apparent that his testimony is too vague
to be reliable.  He does not recollect how much cotton he made
in 1851 ; does not recollect whether he sent the whole or a
part only to Rabun & Fulton ; does not recollect whether
they rendered him an account of sale, etc. ; he does not re-
collect whether he said to plaintiffs that all was right ; he
might or he might not.    He is pretty sure he did whatever
he promised ; and this is the nearest he comes to a positive
affirmation about anything.    And it is rather strange that he
should be rather sure that he did what he promised, seeing
that he neither remembers what he did nor what he promised
about anything.

On the other hand, W. S. Brantly gives a minute account
of all the dealings between the parties, when they began,
when they terminated, the heavy balance due to Rabun &
Fulton by Hampton, for cash purchases and sight drafts,
made and accepted on his account ; of the appropriation of
his cotton crop, etc., furnishing Hampton with the account of
sale, and the application of all the proceeds, and Hampton's
approval, and utterly denies of ever hearing of the under-
standing and agreement which Hampton *thinks* he commu-
nicated.

It is the most improbable thing in the world, the account
which the defendant, through his counsel, gives of this case.
He says, in the face of the account hereto attached, that
Hampton owed the plaintiffs nothing when the note was given
to them ; and Hampton testifies that he did not owe Rabun
& Fulton anything at the time of making this note, and
thinks it was their first dealing.

This is a very unreasonable statement.    By reference to
the account accompanying the statement, it will be perceived
that the dealings between the parties commenced in Febru-

ary, 1851, and this note was not given till the 25th of November thereafter! The truth is, that after crediting Hampton with the entire proceeds of his cotton crop, and the cash for which this Horne note was discounted in bank, $1,978 62, it only left a balance coming to Hampton of $87 71!

This being the state of indebtedness of Hampton, is it not the most improbable thing in the world that Rabun & Fulton should have agreed, when they took this note *to save themselves,* that they would pay it out of Hampton's cotton crop? What benefit would it have been to them to take the note under such circumstances? Why not apply the cotton crop to their current account, instead of raising money upon this note, for this purpose, and then promising to pay the note with the cotton?

And if the giving this note was the first of their dealings, what was it given for? Rather a strange way to commence dealings between the planter and commission merchant or cotton factor.

But it is useless to waste more time upon this subject. The question is too plain.

When a former suit was brought on this note against Hampton and Horne, jointly, Hampton claimed a credit of $500, as the balance due him on Rabun & Fulton's books, and said not one word about this agreement. And that as we have shown, was $415 29 more than he was entitled to— the true balance being $87 71.

In matters of account, it often becomes a material inquiry where payments are made, and there are several items of indebtedness, who is entitled to make the appropriation, and how in case the debtor omits to declare his intention, the law will apply the payments? There is no doubt but a person indebted to the same creditor, on different accounts or demands, making payment, may apply the payment to any demand he pleases. Hence I remarked that it was wholly immaterial as to any understanding between Hampton and Horne, as Hampton had the right to direct the proceeds of his cotton, sold after this note was given, to be applied to the payment of the note, if he so pleased. If the debtor fail

to make the appropriation, the creditor may make such application as he pleases. The civil law compels the creditor to substitute himself in place of the debtor, and apply the payment to that debt which he would first have discharged if he were the debtor. (For the civil law rule, as to the appropriation of payments, see Domat Cushing's Edition 905, et seq.)

But Chief Justice Marshall, in an early case before the Supreme Court, Field vs. Holland, 6 Cranch 8, 27, expressed dissatisfaction with the rule of the civil law, which makes the application in a manner most favorable to the debtor and his wishes. He said: "When a debtor fails to avail himself of the power which he possesses, in consequence of which that power devolves on the creditor, it does not appear unreasonable to suppose that he is content with the manner in which the creditor will exercise it. It being equitable that the whole debt should be paid, it cannot be inequitable to extinguish first those debts for which the security is most precarious." And this is, we think, the weight of authority in this country, and the Courts have gone so far as to hold, that a security, or accommodation endorser, cannot be relieved at the expense of the creditor. To furnish a key to the cases upon this interesting subject, I would cite the following:

Gordon vs. Hobart, 2 Story's Rep., 243; Bossanquet vs. May, 6 Taunton, 597; Brooks vs. Enderby, 2 Br. & Bing, 70; Mann vs. March, 2 Caine's Rep., 99; Roberts vs. Garnie, 3 Caine's 14; Baker vs. Stackpole, 9 Cowen, 435; Peters vs. Anderson, 5 Taunton, 596; Newmarch vs. Clay, 14 East, 239; United States vs. Kirkpatrick, 9 Wheaton, 720; Moss vs. Adams, 4 Iredell's Eq., 42; Ayers vs. Hawkins, 19 Verm, 26; Logan vs. Mason, 6 Watts & Seig. 9; Stone vs. Seymour, 15 Wend, 29.

Judgment affirmed.