602

## 22831. FEDERAL LAND BANK OF COLUMBIA *v.* FULCHER *et al.*

Decided September 23, 1933.   Rehearing denied September 29, 1933.

*S. G. Story, Harry D. Reed,* for plaintiff.

*Lewis & Lewis, E. D. Fulcher,* for defendants.

Stephens, J.   The Federal Land Bank of Columbia, South Carolina, sued W. M. Fulcher as principal and W. M. Fulcher Jr. and E. D. Fulcher as sureties upon a note payable to the plaintiff in the sum of $675 with interest at 8% per annum and the cost of collection, including 10% attorney's fees, executed May 31, 1930, maturing October 1, 1930.   The defendants admitted the execution of the note and denied liability thereon except in the sum of $80.16.   The defendants in their plea alleged that the note was executed by the principal and the sureties thereon to the plaintiff as security for one of a series of semiannual payments due by the defendant W. M. Fulcher to the plaintiff on a loan in the sum of $20,000, secured by a deed executed by the defendant W. M. Fulcher to the plaintiff, that the installment payment for which the note sued on was given as security was in the sum of  $675, represented by two notes for $350 and $325 each, and fell due April 1, 1930, and the amount of this installment included the interest due on the loan to date and an amount to be applied to a reduction of

the principal, that there were a number of installments due upon the loan successively every six months, each in an amount sufficient to pay the interest to date and reduce the principal, that neither the installment for which the note sued upon was given as security, nor the next installment falling due the first of October, 1930, was paid, and the plaintiff, who was the holder of the deed to secure the debt, acting under the provisions contained in the deed, declared the entire principal and interest due for nonpayment of the installments due, and sold the property for the purpose of satisfying the debt, that the proceeds derived from the sale of the property were insufficient by more than the amount of the note sued on to pay the amount due as principal and interest upon the debt, and that after applying the proceeds of the sale to the payment of the entire amount due as interest upon the debt and to a reduction of the amount due as principal upon the debt, the balance due upon the portion of the principal represented in the installment in the sum of $675, due April 1, 1930, for which the note sued on was given as security, applying the proceeds of the sale pro rata to the indebtedness represented by all the unpaid installments, including the installment of $675 for which the note sued on was given as security, there would be due upon this installment a balance of only $80.16. It appeared from the agreed statement of facts that the allegations of the defendant's plea were true and that the deed which had been given to secure the indebtedness contained a power of sale authorizing the lender, the Federal Land Bank, in the event of a default in the payment of any indebtedness due, to sell the property at public outcry and "collect the proceeds of such sale, and after reserving therefrom *the entire amount of principal* and interest due, together with the amount of any taxes, assessments, and premiums of insurance theretofore paid by the Federal Land Bank of Columbia, its successors or assigns, with eight (8) per centum per annum thereon from date of payment, together with all costs and expenses of sale and ten (10) per centum of the principal and interest due for attorney's fees, shall pay any overplus to the said parties of the first part, their heirs, executors, administrators or assigns." There was also introduced in evidence by the plaintiff, as tending to prove the law of South Carolina, the State in which the note sued on and also the $20,000 secured by the land, were payable, an extract from the opinion of the Supreme Court

of that State in the case of Bell *v.* Bell, 20 S. C. 34, which indicated that that court had held that where money is paid by a debtor to a creditor holding several demands against the debtor and neither party makes an application of the fund, and it devolves upon the court to make the application, but that where one demand is less secured than the other, the funds will be first applied to it. The trial judge, in passing upon both the law and facts, held that the proceeds derived from the sale of the land should be applied pro rata on the entire indebtedness, including the portion of the principal and the interest represented in the installment of $675 for which the note sued on was given as security, and found for the plaintiff in the sum of $71.22 principal, $9.50 interest to date of judgment, $8.07 attorney's fees, and all costs of suit. The plaintiff excepts to the verdict and judgment as being contrary to law and without evidence to support it.

Counsel for the plaintiff contend that the rights of the parties are determinable by the law of South Carolina, and that, according to the law of that State, as well as the law of Georgia, where a payment is made by a debtor to a creditor having several demands against the debtor and no application of the fund is made, either by the debtor or the creditor, and it devolves upon a court to make an application of the fund, whether the payment is made voluntarily or involuntarily, as by a foreclosure proceeding, the court will, where one of the demands is better secured than the others, apply the rule announced by Chief Justice Marshall in Field *v.* Holland, 10 U. S. (6 Cranch) 8 (3 L. ed. 136), where a payment was voluntarily made, that "It being equitable that the whole debt should be paid, it can not be inequitable to extinguish first those debts for which the security is most precarious." Counsel for the defendants contend that the rights of the parties are determinable by the law of Georgia, and that under the law of this State, where funds of a debtor are involuntarily paid, as by a foreclosure proceeding, to a creditor having several demands against the debtor, the funds are pro rated to all the demands of equal dignity notwithstanding some of them have better security; and they rely principally on the case of *Citizens & Southern Bank* v. *Armstrong,* 22 *Ga. App.* 138 (95 S. E. 729), as authority for this proposition.

Under the view which we take of the case it is immaterial whether the rights of the parties are determinable by the law of South Caro-

lina or by the law of Georgia, as contended by counsel respectively. Whether the non-statutory law of South Carolina as it appears in evidence could, under the authority of *Slaton* v. *Hall,* 168 *Ga.* 710 (148 S. E. 741, 73 A. L. R. 891), be considered and applied to a determination of the rights of the parties, it is not applicable to the case. The rights of the parties therefore must be determinable by the law of Georgia. Whatever conflict, if any, there may be in the law applied by the courts of Georgia and that applied by the courts of South Carolina respecting the application of a fund belonging to a debtor whether paid voluntarily or involuntarily to a creditor having several demands against the debtor, the rule is universal, whether announced by the courts of Georgia or the courts of other States, that where the funds are involuntarily paid and it is left to the court to make application, the application must be made upon equitable principles. *Hargroves* v. *Cooke,* 15 *Ga.* 321 (7) ; Civil Code (1910), § 4316. There seems to be a conflict of authority as to whether, where funds belonging to a debtor, which are derived involuntarily as by a judicial process, are applied for the benefit of a creditor having several demands against the debtor where some of the demands are better secured than the others, the funds shall be applied pro rata to all the demands or shall be applied first to those demands which are less secured, or, in the words of Chief Justice Marshall, are "most precarious." Whether under the Georgia rule, which necessarily makes an equitable apportionment of the funds, the funds thus derived should be applied pro rata to all the demands, or only to those demands less secured, is immaterial under the facts of this case.

Let us see what are the equities of the parties, and therefore determine what is an equitable apportionment of the fund derived from the sale of the land. The defendant W. M. Fulcher, the principal on the note sued on, before he executed the note was in arrears in the payment of the installment of $675 due April 1, 1930, upon the loan which he had obtained from the Federal Land Bank, and the Federal Land Bank then and there had the right under the contract to declare the entire loan due and to foreclose. It was therefore to the mutual interest and advantage of both the debtor and the creditor to execute to the creditor the note sued on, with the additional security consisting in the indorsements on the note. The debtor obtained the indulgence and the forbearance of the

creditor to foreclose, and the creditor received an additional security for a portion of the debt. The debtor entered into an unconditional contract, by which he and the sureties guaranteed, for a consideration, the payment of this portion of the debt within a period of six months. The creditor retained the security which he had and obtained better and additional security for a portion of the debt, and he should not be deprived of this security and the right to call on the sureties to make good unless he has done something to release the sureties or the debtor, or the sureties can establish some equity in the matter superior to that of the creditor. In *Horne* v. *Planters Bank of Georgia*, 32 *Ga.* 1, 12, it is stated by Chief Justice Lumpkin, after quoting the language which we have quoted from Chief Justice Marshall in *Field* v. Holland, cited supra, that this is "the weight of authority in this country, and the courts have gone so far as to hold that a security, or accommodation endorser, can not be relieved at the expense of the creditor." *High Co.* v. *Arrington*, 45 *Ga. App.* 392 (165 S. E. 151). In the case of Kortlander v. Elston, in the Circuit Court of Appeals of the 6th circuit, 52 Fed. 180, where Elston brought suit against Kortlander upon a written contract of guaranty by the defendant for a consideration to pay to the plaintiff a portion of the money due by one Carman to the plaintiff for the purchase of certain lands, and the defendant sought to have credited against his guarantee a part of the proceeds of the insurance-money due on account of the destruction by fire of buildings upon the premises, Circuit Judge William H. Taft said: "It was said that he had guaranteed the payment of $3,000 out of the $12,000 to be paid for the land, and as surety he had a right in equity to be protected by a pro rata distribution of the collateral over the whole debt. The court below refused a charge embodying this view of Kortlander's right to the insurance money, and told the jury that, unless there was a subsequent agreement changing the rights of the parties, Elston had the right to hold the insurance-money realized on the buildings as security for the payment of the whole debt, exactly as he might have taken possession of the buildings for this purpose, and that Kortlander had no right in law or equity to demand that the money be applied to the amount due under the guaranty. In this we think the court was entirely right. The primary equity growing out of the relation of creditor, debtor, and surety is that the creditor be paid what is due him;

and he does not lose this equity as against the surety, except by misconduct to the latter's prejudice. When the creditor in the original contract has received collateral covering the entire debt, and a personal guaranty on part of it, the legal and the natural presumption, in the absence of circumstances showing the contrary, is that he has taken the personal guaranty as additional or cumulative protection for his debt. In order that his debt may be paid, therefore, he has the right to exhaust all his securities, and in doing so he may apply the collaterals to that part of the debt not covered by the personal guaranty, and hold the guarantor to the full measure of his contract. . . It would seem absurd to require Elston to suffer loss by sharing the collateral with Kortlander for the purpose of reducing the latter's liability on a guaranty, the only object of which could have been to supplement the collateral and increase Elston's security."

In Smythe *v.* New England Loan Co., 12 Wash. 424 (41 Pac. 184), it was held that "One liable as guarantor for the prompt payment of interest on a mortgage bond can not, in an action upon the guaranty, after a foreclosure sale which failed to realize the full amount of principal and interest due, set up the defense that the moneys realized must be applied first, in the absence of express direction, to the interest due." In Union Trust Co. *v.* Detroit Motor Co., 117 Mich. 631 (76 N. W. 112), it was held that "Persons who have guaranteed the payment of the principal and interest of bonds 'at the time specified in the bonds' are not released from liability, either as to matured interest or as to the principal sum when due, by an election of the representative of the bondholders, under a provision in the mortgage securing the bonds, to declare the principal immediately due for default in interest; such election being ineffectual as to the guarantors, and in no way varying their contract." In Monson *v.* Meyer, 190 Ill. 105 (60 N. E. 63), it was held that "If a defendant in foreclosure appeals and gives a bond for the payment, in case of affirmance, of such interest as might accrue and remain otherwise unpaid upon the decree from the date thereof, it is proper, upon affirmance, to apply the proceeds of the sale to satisfy fees, costs and principal before satisfying the interest on the decree, since the deficiency, if any, will thereby embrace the interest which is secured by the appeal bond." In 42 C. J. 314, the rule is laid down that "equity is willing to give the

creditor the best security for his debt; and hence if he holds additional or collateral security for a portion of the mortgage debt, he will generally be permitted to apply the proceeds of foreclosure to that portion of the claim for which the mortgage is the only security."

It seems, if the creditor, as in this case, has taken extra and additional security for a portion of his debt where the whole debt was already secured by a security deed to land, that upon his failure to realize the full amount of the debt out of the proceeds from the sale of the land upon a foreclosure, he has the right to resort to the additional security for the deficiency. The plaintiff, therefore, since the proceeds from the sale of the land were insufficient, in an amount greater than the note sued on, to pay the entire debt, is entitled to recover the full amount of the note sued on, given as security for a portion of the debt additional to the security represented by the deed to the land.

While it may seem a hardship to the defendant debtor that, after his land has been taken from him for the debt, he should be compelled to make an additional payment upon the debt, this court has to be governed by the law, and must hold the defendant to his contract upon the insistence of the plaintiff, and give to the plaintiff that to which he is legally entitled under the contract. The plaintiff is entitled to recover the full amount sued for, and the verdict and judgment in his favor in a less amount was contrary to law and without evidence to support it, and it must, at the instance of the plaintiff, be set aside. The judgment is reversed because the court erred in not finding for the plaintiff the full amount of the note sued on.

*Judgment reversed. Guerry, J., concurs. Jenkins, P. J., being absent on account of illness, took no part.*

SUTTON, J., dissenting. Under the law of this State, as well as the general law, I can not agree with the majority of the court in holding that the trial court erred in applying the funds realized by the plaintiff bank from an exercise of the power of sale contained in the security deed, by crediting the note sued on in this case with the pro-rata share of such funds as should be credited on the two installment notes for which this note was given as collateral security for this note.

The note sued on in this case was not given for the purpose of taking the place of the two installment notes for $350 and $325, due April 1, 1930, but was given only as additional security for these two notes. The bank accepted this note with this understanding, and wrote the defendants a letter at the time stating "We will accept the note as security to your April 1 installments for $325 and $350 and extend the time for payment of these items until October 1." It was at the instance and request of the representative of the bank that the note sued on was executed, and the two sureties, sons of the debtor, indorsed the note with the knowledge and understanding that the security deed from W. M. Fulcher to the bank to 1058 acres of land secured his entire indebtedness to the bank. This seems to be conceded by all parties to this case. Counsel for the bank state in their brief: "The installments due April 1, 1930, and for which the note now sued upon was given as additional security, were not paid, nor were the installments that became due October 1, 1930. Because of these defaults, the bank sold the land conveyed to it as security for the loan, under the power of sale contained in the loan deed, on March 3, 1931, and bought it at the sale for $12,000."

When these installment notes were not paid on October 1, 1930, and the land bank elected to exercise its power of sale in the security deed and foreclosed upon and sold the 1058 acres of land which secured the entire indebtedness of W. M. Fulcher, the defendants were then entitled to have the proceeds derived from the sale of the land applied ratably on all the notes secured by this land. We must bear in mind that the defendant sureties were mere accommodation indorsers on the note sued on, that the note was, in effect, at all times secured by the land embraced in said security deed, executed by the principal debtor to the land bank, and that these sureties knew at the time of their indorsement that the original notes and particular installments due, which were represented in the note they indorsed, were all secured by land conveyed to the bank.

Every right the law affords sureties will be strictly enforced. Their liability is stricti juris and creditors must be astute not to infringe them. *McCarter* v. *Turner*, 49 *Ga.* 309; *McMillan* v. *Heard National Bank*, 19 *Ga. App.* 148 (91 S. E. 235) ; *Maryland Casualty Co.* v. *McAlpin*, 31 *Ga. App.* 303 (120 S. E. 644).

In *Blount* v. *Fisher*, 31 *Ga. App.* 687 (121 S. E. 707), this court

held that "An obligor in an agreement to pay a certain sum of money as representing the debt of another, due the obligee, will be discharged pro tanto upon the obligation in proportion to any reduction made by the payment of the other upon the indebtedness." In *Barrett* v. *Bass,* 105 *Ga.* 421 (31 S. E. 435), it was held: "Where a creditor by promissory note signed by three persons, two of whom were sureties, having as further security for his debt, a mortgage upon personal property, takes charge of such personalty, the same being sufficient in value to discharge the debt, and fails to appropriate it to the payment of the note, the sureties will be discharged from liability thereon. Especially is this true when the inducement held out to the sureties to undertake the obligation was a statement by the creditor that he had a mortgage upon personalty as additional security." In *Parks* v. *Savannah Bank & Trust Co.,* 34 *Ga. App.* 554 (130 S. E. 365), this court held that "In a suit against the sureties upon the note, where it appeared that a part of the collateral, consisting of promissory notes belonging to the maker, was collected and the proceeds applied by the payee, without consent of the sureties, to an indebtedness due to the payee by the maker on which the sureties were in no wise liable, the sureties were entitled to plead as a payment upon the note sued on the amount of the collateral so applied upon the other indebtedness." So in *Kyle* v. *Chattahoochee National Bank,* 96 *Ga.* 693 (24 S. E. 149), the Supreme Court of this State held that "Where a promissory note is drawn by one person for the accommodation of another, and such note, together with like papers drawn by other persons to the order of the same payee, and other choses in action upon open account due to the payee, are by him assigned to secure the payment of an indebtedness by him to yet another person, which several items of indebtedness are each before assignment severally secured by a mortgage executed by the payee of such note to such other person, upon the understanding between the mortgagor and mortgagee that the purpose of the mortgage is to save harmless such accommodation maker as well as to secure the mortgagee, the mortgage containing no direction as to the appropriation of the moneys arising from a foreclosure thereunder, and no other direction being given as to how and in what manner such moneys shall be appropriated to such several items of indebtedness, the law will so direct the appropriation to such items of the secured indebtedness as to give the accom-

modation maker the benefit of the security afforded by the mortgage, and, to that end, will apportion the money realized from the foreclosure ratably among the several items secured. Section 2869 of the code [now section 4316 of the Civil Code of 1910] is applicable only in cases of voluntary payments by the debtor." In that case the court said: "Each of these accommodation makers had a vested interest in all sums which should be realized upon the foreclosure of the mortgage. The mortgage itself was equivalent to an appropriation in advance of the fund;" and further said that "It is a rule of general acceptance and recognized authority, that in all cases where money is raised by judicial process, it shall be appropriated among claims of equal dignity ratably. It would be inequitable and unjust to allow the mortgagee to so appropriate the fund thus realized as to deprive these accommodation makers of the benefit of the security afforded them by the mortgage." Then again this court, in *Citizens & Southern Bank* v. *Armstrong*, 22 *Ga. App.* 138 (95 S. E. 729), held that "The statutory provision to the effect that when a debtor makes a payment to a creditor holding several demands against him, and fails to direct how it shall be applied, the creditor may at his election appropriate it to any of them, relates to voluntary payments only. Where funds are distributed in judicial proceedings, 'the law will direct the application in such manner as is reasonable and equitable, both as to parties and third persons.' Civil Code (1910), § 4316. . . The court did not err in holding that a dividend paid to the plaintiff in fi. fa. on several demands against the Irish-American Bank, including the execution against the bank as principal and Armstrong as surety, should be applied ratably to all of these demands (and not exclusively upon the other and unsecured demands held by the creditor, at the creditor's sole option or selection), notwithstanding no election had been made by the principal debtor, and although a surety would not ordinarily be empowered to direct the application of a voluntary payment made to such creditor by his principal or another." In that case the court said the statute expressly authorizes the application of payments by the court, in the circumstances under review, in such manner as may be equitable both as to parties and third persons, and that at all events the surety was a party in fact as well as in name in the case, in whose behalf the court might direct the application of payments in such a manner as to protect his equitable rights.

After foreclosure and sale of the property, it was too late for the bank to direct the application of the funds derived from the sale and its right so to do became lost, and the court could make such application of the funds as would be consistent with equity and justice. *Austin* v. *Southern Home Asso.*, 122 *Ga.* 439 (9) (50 S. E. 382).

Many courts have adopted the pro-rata rule of appropriation equally and ratably among all the debts secured by the instrument. The weight of authority is to the effect that the several debts or claims equally secured by the same mortgage are entitled to share ratably in the proceeds of its foreclosure. 42 C. J. 310, § 2012; 19 R. C. L. 656 et seq. As between an indorser and the mortgagee, all the notes being secured by the same mortgage, there is no priority, and the fund derived from a sale on foreclosure should be applied pro rata, where it is not sufficient to pay all. Bridenbecker *v.* Lewell, 32 Barb. (N. Y.) 9. To the same effect see McDermott *v.* Bank of Tennessee, 9 Humph. (Tenn.) 123. It was held in Fielder *v.* Varner, 45 Ala. 429, that since all the notes secured by a single mortgage, given to and remaining in the hands of the mortgagee, share equally in the proceeds of the sale of the mortgaged property, without regard to their date of maturity, the accommodation indorser on any one of such notes is, by the sale, released from his liability thereon to the amount to which that particular note is entitled to share in the proceeds. This case was approved and followed in Bostick *v.* Jacobs, 133 Ala. 344 (32 So. 136, 91 Am. St. R. 36). As between debts for which a surety is bound and those for which he is not, of payments that are not voluntary, but represent the proceeds of legal or judicial proceedings, such proceeds are to be appropriated ratably to all demands to which the proceeds are applicable, and can not be applied exclusively to demands not covered by the surety's obligation. Willis *v.* Caldwell, 10 B. Mon. (Ky.) 199; Olds Wagon Works *v.* Bank of Louisville, 10 Ky. L. 235; Blackstone Bank *v.* Hill, 10 Pick. (Mass.) 129. In Orleans County Nat. Bank *v.* Moore, 112 N. Y. 543 (20 N. E. 357, 3 L. R. A. 302, 8 Am. St. R. 775), it was held that the proceeds of a mortgage securing notes with different sureties are to be applied pro rata, and that the mortgagee can not control their application. In that case the court said that to hold otherwise would leave out of view entirely all rights or equities of

the surety, and that "The law has always regarded a surety as having some rights in the security, though furnished directly by the debtor to the creditor. The security having been furnished by the debtor, the creditor must dispose of it upon equitable principles." In St. Louis &c. R. Co. v. Ravia Granite Ballast Co., 70 Okla. 273 (174 Pac. 252), it was held that "Payments, in the absence of application by the debtor or creditor, will by law be applied as a credit upon debts due, and if some are secured and others unsecured the same will be applied upon the unsecured claims unless the payment is derived from a secured source, that is, by the sale of the mortgaged property, in which event the same will be applied on the claims secured by the mortgage." In Exchange Bank v. McDill, 56 S. C. 565 (35 S. E. 260), it was held that "The law implies a contract by the creditor that the surety shall have the benefit of all securities or collaterals of the principal debtor held by the creditor for the enforcement of the debt for which the surety is liable." There are many other respectable authorities which might be referred to that sustain the doctrine of applying the proceeds derived from the sale of mortgaged property ratably, but which for the sake of brevity will not be set forth herein.

The case of Horne v. Planters Bank, 32 Ga. 1, is not authority to support the majority holding in this case. In that case the ruling was that "When there are several items of indebtedness, the debtor has the right to make the application of payment; and failing to do so, the right devolves upon the creditor to appropriate the payments." That was the law then and is the law today, being in substance the first part of section 4316 of the Civil Code of 1910. I do not take issue with the quotation from the Supreme Court of the United States, given in 32 Ga., that "When a debtor fails to avail himself of the power which he possesses, in consequence of which that power devolves upon the creditor, it does not appear unreasonable to suppose that he is content with the manner in which the creditor will exercise it. It being equitable that the whole debt should be paid, it can not be inequitable to extinguish first those debts for which the security is most precarious." This is sound law, but applies only in cases of voluntary payments. However, in the instant case, and in the authorities above referred to in this dissent, the payments were not voluntary ones, but involuntary payments, and as to them, as we have seen, the above rule laid down

by the Supreme Court of the United States is not applicable. Where it devolves upon the court to apply the payments, or the payment is the money realized from a sale of the mortgaged property, the same are applied ratably, and, as stated in the code, "in such manner as is reasonable and equitable, both as to parties and third persons." It is true that after quoting the above language from the Supreme Court of the United States, the writer of the opinion in 32 *Ga.* said: "And this is, we think, the weight of authority in this country, and the courts have gone so far as to hold, that a security, or accommodation endorser, can not be relieved at the expense of the creditor. To furnish a key to the cases upon this interesting subject, I would cite the following." Then follows citation of some foreign authorities. The above was not a ruling of the court, but only a statement of the writer's opinion as to how far the courts of other States had gone. However, as we have seen, by the great weight of authority, that statement was not entirely correct. The most strained construction that could be placed upon the language, "the courts have gone so far as to hold that a security, or accommodation endorser, can not be relieved at the expense of the creditor," would not make it a holding that an accommodation indorser on a note secured by a mortgage, which also secured other indebtedness of the mortgagor, would not be, upon a sale of the mortgaged premises, released from liability thereon to the extent to which the note indorsed by him is entitled to share in the proceeds of such sale. Neither is the decision of this court in *High Co.* v. *Arrington,* 45 *Ga. App.* 392 (165 S. E. 151), any authority for the ruling of the majority in the instant case. In that case it does not appear that the payments were derived from the sale of mortgaged property, nor does it appear that the payments were involuntary, nor does it appear that the rights of sureties were involved.

For the above reasons, I can not agree with the majority ruling, and must dissent therefrom.