**Lee H. WEINSTEIN, Peter Brown, David Brown, and Adam Brown, Plaintiffs–Appellees,**

v.

**PARK FUNDING CORP., a Colorado corporation, Defendant–Appellant.**

**No. 93CA0109.**

Colorado Court of Appeals, Div. II.

July 14, 1994.

Karsh & Fulton, P.C., Alan E. Karsh, Denver, for plaintiffs-appellees.

Berenbaum & Weinshienk, P.C., Martin D. Buckley, Patricia S. Bellac, Denver, for defendant-appellant.

Opinion by Judge TAUBMAN.

Defendant, Park Funding Corp. (Park Funding), appeals the judgment entered pursuant to C.R.C.P. 54(b) in favor of plaintiffs, Lee H. Weinstein, Peter Brown, David Brown, and Adam Brown (collectively Weinstein). Specifically, Park Funding appeals the trial court's ruling that Weinstein was entitled to allocate the proceeds from a foreclosure sale solely to the non-recourse portion of the indebtedness secured by a deed of

trust. It also appeals the trial court's award of taxes in addition to the deficiency, the inclusion of a defaulted payment as accrued and unpaid interest, and a clerical error in the amount of the deficiency. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

In 1981, Park Funding purchased commercial real estate known as Citadel Station from Weinstein, who provided the financing for the purchase and received four promissory notes secured by a deed of trust in his favor. The notes were non-recourse and secured only by the property with two exceptions: The notes provided that Park Funding would be personally liable for "accrued and unpaid interest which has been deferred and added to principal" and for "any liens which result from the actions of [Park Funding] and its successors or assigns, that may be imposed upon all or any portion of the tract conveyed ... if said liens have ... priority over the deed of trust...."

In 1987, Park Funding transferred Citadel Station to Legreje Corporation. Legreje assumed the promissory notes and deed of trust. Under the terms of the assumption agreement, Legreje agreed that no additional interest amounts would be deferred and added to principal. Legreje made payments as required by the assumption agreement until July 1989 when it defaulted on its payments.

After the default, Weinstein declared the notes due in full and initiated foreclosure proceedings with the Douglas County Public Trustee on the property secured by the notes. Park Funding and its counsel received notice of the intended foreclosure pursuant to the provisions in the deed of trust. Weinstein's appraiser valued the property at $900,000 and Weinstein submitted a bid of $1,599,177.63 to the Public Trustee. That bid specified how the proceeds were to be apportioned if Weinstein received the property at the sale.

The Trustee sold the property to Weinstein, the sole bidder, at the foreclosure sale on April 24, 1990. Park Funding did not appear at or contest the foreclosure proceedings. The redemption period expired without redemption of the property.

The outstanding debt under the notes was $2,093,281.81. Thus, the sale resulted in a deficiency of $534,103.55 for accrued and unpaid interest. The trustee announced Weinstein's bid and this deficiency at the foreclosure sale, but did not allocate the deficiency as described in Weinstein's bid.

In June 1990, Weinstein filed suit in district court to recover the deficiency from Park Funding, alleging that Park Funding and Legreje were jointly and severally liable for accrued and deferred interest in the amount of $534,103.55 and for unpaid real estate taxes owed for 1988, 1989, and 1990.

The trial court entered an order, pursuant to C.R.C.P. 54(b), that Weinstein could specify the allocation of his bid amount and finding that, in addition to the deficiency, Park Funding was liable for unpaid real estate taxes in the amount of $207,222.01 for 1988 and 1989.

## I. Application of the Proceeds from Foreclosure

■ Park Funding argues that the trial court improperly held that Weinstein was entitled to direct application of the proceeds from the foreclosure sale to those portions of the debt which were non-recourse. We agree but conclude that the ruling should be affirmed on other grounds.

Weinstein argues that, under the traditional rule of payments, he could determine the application of the proceeds if Park Funding failed to do so. He relies on *Weston Group, Inc. v. A.B. Hirschfeld Press, Inc.*, 845 P.2d 1162 (Colo.1993), in which the supreme court held that, if a debtor owes secured and unsecured debts to the same creditor, the debtor has the right, at the time of payment, to direct the application of its voluntary payments, but that, if the debtor does not provide such direction, then the creditor, at the time of payment, may elect to apply the payments to either of the debts. Weinstein argues that this rule extends to the foreclosure proceeds on a deed of trust in which a portion of the debt is secured only by the property and another portion has additional security.

However, relying on *Toll v. Colorado National Bank*, 86 Colo. 529, 283 P. 778 (1929), Park Funding asserts that the proceeds from a foreclosure sale should be applied ratably between the less secured portion of the debt and the more secured portion. In *Toll*, the supreme court held that assignees holding several notes were entitled to share pro rata without preference if the proceeds were insufficient to satisfy all debts.

Here, since the record shows that the foreclosure proceeds were distributed ratably among plaintiffs, *Toll* is distinguishable. Thus, the issue remains as to whether the foreclosure proceeds may be apportioned by the creditor if the debtor is silent concerning how the payment should be apportioned. *Toll* does not address this issue, which appears to be one of first impression for our courts.

■ We conclude that *Weston Group, supra*, is inapplicable because the proceeds of a foreclosure sale are considered to be involuntary, rather than voluntary, payments. *See Massachusetts Mutual Life Insurance Co. v. Paust*, 212 Minn. 56, 2 N.W.2d 410 (1942). Absent an agreement to the contrary, such involuntary payments must be applied by the court according to equitable principles.

Courts have disagreed in interpreting what equity mandates. In *Adams v. Taylor*, 253 N.C. 411, 117 S.E.2d 27 (1960), for example, the North Carolina Supreme Court applied principles of intrinsic justice to determine the proper apportionment of proceeds from a government condemnation. The court concluded that the proceeds must be applied ratably between the debt's principal and interest because a different application would accelerate the monthly installment payments contrary to the note's provisions. *See also First National City Bank v. Kline*, 439 F.Supp. 726 (S.D.N.Y.1977) (court applied bankruptcy proceeds ratably among several debts); *State Bank of Streeter v. Nester*, 385 N.W.2d 95 (N.D.1986) (pro rata distribution of proceeds allowed where third party bank had power to protect itself better).

However, other courts hold that, if a part of the debt secured by a deed of trust is protected by other agreements to pay the debt, equity dictates that the net proceeds of the foreclosure sale be applied to that part of the debt for which the creditor holds no collateral other than the agreement to repay. *See Prudential Insurance Co. v. Enkema Holding Co.*, 196 Minn. 154, 264 N.W. 576 (1936); *Federal Land Bank v. Fulcher*, 47 Ga.App. 602, 171 S.E. 152 (1933); *see generally Massachusetts Mutual Life Insurance Co. v. Paust, supra* (foreclosure proceeds applied to claims barred by statute of limitations first to ensure creditor's maximum recovery); *Lipscomb v. Tucker*, 294 Ala. 246, 314 So.2d 840 (1975) (insufficient evidence of additional unsecured note to allow application of foreclosure proceeds to be applied to it first).

■ We find persuasive the reasoning of those courts that hold that equity requires courts to apply the proceeds from a foreclosure sale in a manner which provides the creditor the greatest opportunity to recover payment for the full debt. In other words, when a creditor has received collateral covering the entire debt, and a personal guaranty on part of it, there is a presumption, in the absence of circumstances showing the contrary, that the personal guaranty is an additional protection for the creditor. In such circumstances, the creditor may apply any proceeds to that part of the debt not covered by the personal guaranty, and thus hold the guarantor to his or her contract. *See Federal Land Bank v. Fulcher, supra*.

■ Here, both parties were sophisticated businessmen, both were represented by attorneys during the negotiation of the notes and deeds of trust. And, both agreed to the additional recourse provisions. Thus, the trial court, exercising its equitable powers, had authority to allocate those proceeds in the creditor's best interest by directing they be applied first to the indebtedness without a personal guaranty.

Under the rule we adopt here, Weinstein could not direct the application of the foreclosure proceeds unless there existed a specific agreement with Park Funding. Since there was no such agreement, the trial court incorrectly determined that Weinstein could specify the application of the foreclosure proceeds.

However, because we conclude the trial court reached the correct result, we will not reverse its judgment on this issue. *See Frank C. Klein & Co. v. Colorado Compensation Insurance Authority,* 859 P.2d 323 (Colo.App.1993).

Since we conclude that Weinstein was not entitled to direct the application of the proceeds from the foreclosure sale, we need not address whether Park Funding was entitled to specific notice of the application of the foreclosure proceeds.

### II. Unpaid Real Estate Taxes

Park Funding contends that the trial court erred in finding it liable for the unpaid 1988 and 1989 real estate taxes owed in addition to the deficiency amount. We disagree.

### A.

Park Funding argues that § 38–38–106, C.R.S. (1993 Cum.Supp.), which requires the owner of the debt to bid at least the "good faith estimate of the fair market value of the property being sold (less the amount of unpaid real property taxes . . . secured by liens . . . which are senior to the lien being foreclosed)," indicates the General Assembly's intent to include unpaid taxes in the deficiency judgment. *See also* § 38–38–101(1)(e), C.R.S. (1993 Cum.Supp.) (statute not effective until after foreclosure sale here requires that when notice of election and demand is filed, it must be accompanied by creditor's affidavit stating "the outstanding principal balance due and owing"). However, as Park Funding acknowledges, § 38–38–106 was not in effect at the time of foreclosure here, so we need not address its applicability.

### B.

Park Funding also asserts that § 38–39–101, C.R.S. (1982 Repl.Vol. 16A) demonstrates the General Assembly's intent to include unpaid taxes in the foreclosure bid.

Section 38–39–101 permits the holder of a certificate of purchase to pay unpaid and due real estate taxes, file the receipts with the Public Trustee, and recoup such payments in the event of redemption. The statute does not make this payment mandatory.

However, since we conclude that the lien recourse provision in the promissory note is applicable to unpaid taxes, we need not determine whether an amount for unpaid taxes must be included in the foreclosure bid. Under that provision, Park Funding was personally liable for unpaid taxes regardless of whether the statute includes this amount in the foreclosure bid.

### C.

Park Funding argues that the promissory notes apply only to mechanics' liens because they require "actions of maker" which result in a lien. We disagree.

The promissory notes each contain the following provision:

> Maker and its successors or assigns shall be personally liable for, and indemnify and hold the holder harmless from, *any and all liability* which holder may incur *resulting from the imposition of any liens* which result from the actions of maker and its successors or assigns, that may be imposed upon all or any portion of the tract conveyed to maker on even date herewith, *if said liens have,* or the persons imposing such liens assert that said liens have, *priority over the Deed of Trust* given by maker to holders on even date herewith. (emphasis added)

If the language in a contract is plain, clear, and free from absurdity, we must enforce it as written. *Cary v. Chevron U.S.A., Inc.,* 867 P.2d 117 (Colo.App.1993).

"Any," given its plain meaning, would include all possible liens with priority over the deed of trust. *See Obert v. Department of Social Services,* 766 P.2d 1186 (Colo.1988) ("any" broadly interpreted to mean without restriction or limitation).

The record reveals that both parties stipulated: "Pursuant to C.R.S. § 39–1–107, real property taxes which had been assessed and were due and owing were liens on the property with priority over the deed of trust." The record also shows that both parties were represented by counsel during the negotiations regarding the lien recourse provision.

Additionally, Park Funding's representative during the negotiations conceded at trial that the recourse language of the notes regarding superior liens did not limit such liens to mechanics' liens.

Furthermore, since at the time of the foreclosure hearing, the 1988 and 1989 taxes had not been paid by Weinstein, those taxes were only a contingent liability and did not have to be included as amounts due under the note. If the property had been purchased by a third party or redeemed by Park Funding, Weinstein would not have incurred any obligation to pay those taxes. Thus, there was no liability under the notes for their payment.

### D.

Park Funding also contends that since taxes were not specifically referred to in the notes but were mentioned in the deed of trust, both parties intended taxes to be paid by including them in the foreclosure bid pursuant to the terms of the deed of trust. Thus, Park Funding argues that Weinstein is precluded from receiving an award for taxes in addition to the deficiency award because Weinstein did not pay the taxes prior to foreclosure and include them in the foreclosure bid. We disagree.

The deed of trust provides that, if the taxes are paid by Weinstein, the amount of such payment would be added to the indebtedness secured by the deed of trust and paid out of the foreclosure proceeds:

> And that during the continuance of said indebtedness or any part thereof, the said party of the first part [Park Funding] will in due season pay all taxes and assessments levied on said property ... And in case of the refusal or neglect of said party of the first part ... to pay such taxes or assessments ... then the holder [Weinstein] of said notes, or any of them, *may* ... pay such taxes or assessments or amounts due ... and all monies thus paid, with interest thereon at 14% per annum, shall become so much additional indebtedness secured by this Deed of Trust, and shall be paid out of the proceeds of the sale of the property aforesaid, if not otherwise

paid by said party of the first part. (emphasis added)

Again, the plain meaning of the deed of trust language is that Weinstein's payment of taxes is discretionary. Thus, we conclude that this language does not affect the applicability of the recourse provision when Weinstein failed to pay taxes prior to foreclosure.

Accordingly, the trial court properly found that the plain meaning of the lien recourse provision of the note imposed personal liability on Park Funding for the 1988 and 1989 real estate taxes in addition to the deficiency awarded.

### III.   July 1989 Interest Payment Default

█ Park Funding also maintains that the trial court improperly included the interest payment due in July 1989 in the amount of the deficiency under the unpaid interest recourse provision of the promissory note. We agree.

The unpaid interest recourse provision of the promissory note states: "Purchaser and its successors or assigns shall be personally liable for any and all amounts of accrued and unpaid interest which has been deferred and added to principal."

The record demonstrates that Park Funding paid 5 percent of the 10 percent interest due each month, i.e., half, and the unpaid 5 percent was deferred and added to the principal. When Park Funding sold the property to Legreje, Legreje agreed to pay the entire 10 percent interest payments. Thus, no interest was deferred and added to the principal balance after Legreje assumed the notes and deed of trust.

The plain meaning of the unpaid interest recourse provision requires personal liability only for the unpaid interest which has been deferred and added to principal. Since the missed payment did not include any amount that was to be deferred and added to principal, we conclude that the trial court improperly awarded the missed July 1989 payment to Weinstein as part of the deficiency. Accordingly, this portion of the deficiency judgment cannot stand and on remand the deficiency judgment must be revised to so reflect.

### IV. Clerical Error in Judgment

Park Funding finally argues that the trial court misstated the amount of the deficiency bid in its final judgment. Park Funding points out that the trial court incorrectly awarded Weinstein $54*3*,103.45 when the actual amount of the deficiency was $53*4*,103.55. We agree.

The stipulated facts state that the unpaid and accrued interest is $534,103.55. The record demonstrates that the deficiency bid at the foreclosure sale was $534,103.55 and that this amount constitutes the total unpaid and accrued interest at that time. The deficiency noted by the Public Trustee on the promissory notes was $534,103.55, and Weinstein's complaint requests the same amount. However, the judgment entered pursuant to C.R.C.P. 54(b) was for $543,103.45, a windfall of $8,999.90 for Weinstein.

Because the judgment entered by the trial court appears to be based on clerical error, we remand for a determination of whether there was a clerical error, and if so, for entry of judgment in the proper amount. *See* C.R.C.P. 60(a)

The judgment is affirmed in all respects, except as to the apparent clerical error contained therein and as to the July 1989 interest payment, and the cause is remanded for further proceedings relative to these two matters.

CRISWELL and MARQUEZ, JJ., concur.